FIFTH DIVISION

 FILED: 3/06/98

No.  1-97-0268

THE PEOPLE OF THE STATE OF ILLINOIS, ) APPEAL FROM THE

) CIRCUIT COURT OF

Plaintiff-Appellee,    ) COOK COUNTY

)

v. )

)

LATIF ABDUL-MUTAKABBIR, ) HONORABLE

) JAMES B. LINN,

Defendant-Appellant.   ) JUDGE PRESIDING.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

     The defendant, Latif Abdul-Mutakabbir, was convicted of eight counts of false personation of a judicial official in violation of section 32-5 of the Criminal Code of 1961 (Code) (720 ILCS 5/32-5 (West 1996)).  The defendant appeals the con­viction contending that he was denied a fair trial when the court refused to instruct the jury as to the mental state necessary for a violation of section 32-5 of the Code.  For the reasons which follow, we affirm in part, reverse in part, vacate the defendant's sentence, and remand the cause to the circuit court for further proceedings consistent with this opinion. 

     On November 11, 1993, the Illinois Supreme Court entered an order suspending the defendant from the practice of law for a period of three years.  The mandate on the order issued on November 22, 1993, and a notice of the court's order and mandate was sent to the defendant on the same day.  On December 14, 1993, the defen­dant filed a 
pro-se
 pleading with the clerk of the supreme court which was entitled "Petition For Rehearing Or To Stay Mandate On Certiorari To The United States Supreme Court" (hereinafter the "petition").  On that same day, the clerk of the supreme court sent a letter to the defen­dant informing him that his petition would be treated by the supreme court as a motion to reconsider and to recall its man­date.  On January 11, 1994, the supreme court entered an order  denying the defendant's motion, and the clerk of the supreme court sent a notice of the court's order to the defendant and the Attorney Registration and Disci­plinary Commission (ARDC).       On January 28, 1994, Jonathan Siner, an attorney employed by the ARDC, sent a letter to the defendant stating that the ARDC had been informed that, although the defen­dant was suspended from the practice of law on November 22, 1993, he was still holding himself out as an attorney.  The letter stated that as of January 26, 1994, the defendant was still listed as an attorney on the directory in the lobby of his office building and a recorded message on the defendant's business phone identified him as an attorney.  Siner's letter reminded the defendant of his duties as a disciplined attorney under Supreme Court Rule 764 (134 Ill. 2d R. 764), and requested that the defendant inform the ARDC in writing within 14 days as to the steps he had taken to comply.  

     The defendant forwarded a letter written on his law office stationary to Siner on February 14, 1994.  The entire text of the defendant's letter states: 

"In response to your letter of January 28, 1994, I direct your attention to Illinois Supreme Court Rules 367 and 368.  

Should you require additional informa­tion, please

let me know."

     Sarie Weissman Montgomery, also an attorney employed by the ARDC, wrote a letter to the defendant on January 11, 1995.  Montgomery's letter referenced the defendant's suspension and the fact that his motion to reconsider had been denied, and requested that he comply with the affidavit requirements of Supreme Court Rule 764(g) (134 Ill. 2d R. 764(g)).  Montgomery sent the letter to the defendant via certified mail and received a return receipt signed by the defendant.  

     Ellyn Rosen, another attorney employed by the ARDC, com­menced an investigation of the defendant after the ARDC received a communication from a judge in the fall of 1994 indicating that the defendant was practicing law.  On April 24, 1996, Rosen acted as the complainant in the eight count misdemeanor complaint charging the defendant with violations of section 32-5 of the Code which gave rise to this action (hereinafter the "com­­plaint").   The complaint alleged that on eight specified occa­sions from January 7, 1994, through April 19, 1996, the defendant "falsely represented himself to be an attorney authorized to practice law."  Prior to trial, the State moved for and was granted leave to amend each of the eight counts to allege that the defendant "
knowingly
 and falsely represented himself to be an attorney authorized to practice law."  (Emphasis added.)  The amendment was made without objection from the defendant, and neither the State's right to amend nor the adequacy of the complaint as amended is an issue on appeal.

     Upon the trial of the cause, the defendant stipulated that he represented himself to be an attorney authorized to practice law on the eight occasions alleged in the complaint.  His defense centered around his belief that Supreme Court Rule 368 (134 Ill. 2d R. 368) applied to orders entered by the supreme court in disciplinary matters and, as a consequence, the filing of his petition acted to stay the order of suspension and the mandate issued thereon.  The defendant also testified that since the supreme court ruled on his petition as a motion to reconsider its order of November 11, 1993, and not on his request for rehearing, the stay provided for in Rule 368(a) is still in effect.  The defendant admitted that he received the notices of the order of suspension and mandate sent by the clerk of the supreme court on November 22, 1993, the notice of the supreme court's denial of his motion to reconsider and to recall its mandate sent by the clerk of the supreme court on January 11, 1994, Siner's letter on January 28, 1994, and Montgomery's letter of January 11, 1995. 

     During the jury instruction conference, defense counsel requested that the word "knowledge" be inserted into the in­structions for false personation of a judicial official.  The State argued that the offense is an absolute liability offense and does not require a mental state.  The trial judge agreed with the State and instructed the jury that to sustain the charge the State must prove beyond a reasonable doubt that "the defendant falsely represented himself to be an attorney authorized to practice law."       The jury found the defendant guilty of all eight counts as charged.  Subsequently, the trial court denied the defendant's motion for a new trial and sentenced the defendant to two years' probation, 60 days' incarceration, and 30 days of community service.  The defendant now appeals, contending that the trial court erred when it refused to instruct the jury that knowledge was an element of the offense of false personation of a judicial official.

     The first step in our analysis requires us to determine what, if any, mental state is necessary for a violation of section 32-5 of the Code. 

     Section 32-5 provides in pertinent part that "[a] person who falsely represents himself to be an attorney authorized to practice law *** commits a Class B misdemeanor."  720 ILCS 5/32-5 (West 1996).  Although the statute does not contain express language describing a mental state as an element of the offense, it is not, as the State contends, an absolute liability offense.

     Section 4-9 of the Code which governs absolute liability offenses provides that "[a] person may be guilty of an offense without having, as to each element thereof, one of the mental states described in Sections 4-4 through 4-7 if the offense is a misdemeanor which is not punishable by incarceration or by a fine exceeding $500, or the statute defining the offense 
clearly
 indicates a legislative purpose to impose absolute liability for the conduct described."  (Emphasis added.) 720 ILCS 5/4-9 (West 1996).  Although a violation of section 32-5 is a misdemeanor, it carries a potential penalty of up to six months' incarceration.  730 ILCS 5/5-8-3(a)(2) (West 1996).  Further, there is nothing in the language of section 32-5 which 
clearly
 indicates a legisla­tive purpose to impose absolute liability.  See 
People v. Ander­son
, 148 Ill. 2d 15, 23-24, 591 N.E.2d 461 (1992); 
People v. Cully
, 286 Ill. App. 3d 155, 675 N.E.2d 1017 (1997).  

     Given our conclusion that section 32-5 is not an absolute liability offense, we must next determine which mental state applies to "each element described by the statute defining the offense."  720 ILCS 5/4-3(a) (West 1996).  When, as in this case, a statute neither prescribes a particular mental state nor creates an absolute liability offense, then the mental state applicable to each element is either intent, knowledge, or recklessness.  
People v. Gean
, 143 Ill. 2d 281, 288, 573 N.E.2d 818 (1991); see also 720 ILCS 5/4-3(b), 4-4, 4-5, 4-6 (West 1996).  

     The defendant argues, and we agree, that knowledge is the appropriate mental state applicable to the falsity element of the offense set forth in section 32-5 of the Code.  To state that a person commits an offense by falsely representing a fact to be true without requiring that the person know of the falsity of the representation is the equivalent of absolute liability.  Conse­quently, we hold that in order to convict an individual of an offense under section 32-5 of the Code for falsely representing himself to be an attorney authorized to practice law, the State is required to prove beyond a reasonable doubt that such a person knew that his representation was false when made.

     The fact that a mental state is implied in an offense does not necessarily require, however, that a court instruct the jury as to the requisite mental state.  When a mental state implied in an offense by reason of section 4-3 of the Code necessarily accompanies the acts prohibited by the statute creating the offense, the court is not required to instruct the jury as to the mental state.  
People v. Burton
, 201 Ill. App. 3d 116, 558 N.E.2d 1369 (1990).  However, "some mental states involved in offenses, although not specifically mentioned in the statute defining the offense, may be implied in the offense and be specific enough to require instruction to the jury."  
Burton
, 201 Ill. App. 3d at 122.  We believe that the mental state of knowledge implied with respect to the falsity element of an offense under section 32-5 of the Code is specific enough to require an instruction.  In cases where a person is charged with falsely representing himself to be an attorney authorized to practice law, there will rarely be a question as to whether the representation was false, but there may well be a question as to whether the person knew that the representation was false, especially in the case of a recently suspended attorney.  Accordingly, the trial court erred in refusing the defendant's request that the word "knowledge" be inserted into the instruction setting forth the elements of the offense charged in this case.  See 
Cully
, 286 Ill. App. 3d at 166.

     The fact that we have determined that an instructional error occurred in this case does not end our analysis.  "Even though error may have been committed in giving or refusing instructions it will not always justify reversal when the evidence of the defendant's guilt is so clear and convincing that the jury could not reasonably have found him not guilty."  
People v. Ward
, 32 Ill. 2d 253, 256, 204 N.E.2d 741 (1965); see also 
People v. Jones
, 81 Ill. 2d 1, 9, 405 N.E.2d 343 (1979); 
Cully
, 286 Ill. App. 3d at 166.  In this case, the State argues that any error in failing to instruct the jury with respect to the requisite mental state was harmless in light of the overwhelming evidence of the defendant's guilt.  We agree as to all but one of the offenses for which the defendant was convicted.

     As stated earlier, the defendant stipulated that he repre­sented himself to be an attorney authorized to practice law on the eight occasions alleged in the complaint.  The theory of the defense in this case was the defendant's contention that, al­though he was aware that the supreme court had entered an order suspending him from the practice of law prior to the dates upon which the complaint alleged that he falsely represented himself to be an attorney authorized to practice law, he believed that the filing of his petition on December 14, 1993, acted to stay both the order of suspension and the mandate issued thereon by reason of the provisions of Supreme Court Rule 368.  The defen­dant testified that since the supreme court never ruled on his request for a rehearing, he was of the belief that the stay on the order suspending him from the practice of law was never lifted.  Before discussing the effects that the defendant's professed beliefs may have had on his mental state at the time that he represented himself to be an attorney authorized to practice law, we will briefly address the correctness of his interpretation of Rule 368.

     Article III of the Illinois Supreme Court Rules (134 Ill. 2d R. 301, 
et seq
.) governs appeals in civil cases.  Supreme Court Rule 368 provides that a timely filed petition for rehearing stays a reviewing court's mandate in a civil appeal "until disposition of the petition unless otherwise ordered by the court."  134 Ill. 2d R. 368(a).  However, an attorney discipli­nary proceeding is not a civil action; rather, it is an investi­gation into the conduct of an attorney to determine whether he should be disbarred or otherwise disciplined.  
In re Yablunky
, 407 Ill. 111, 94 N.E.2d 841 (1950).  Consequently, Rule 368 has no application to an order entered by the supreme court in a disci­plinary proceeding.     

     The Illinois Supreme Court "possesses the inherent and exclusive power to regulate the practice of law in this State and to sanction or discipline the unprofessional conduct of attorneys admitted to practice before it."  
In re Mitan
, 119 Ill. 2d 229, 246, 518 N.E.2d 1000 (1987).  In the exercise of that power, the supreme court has promulgated a comprehensive scheme to regulate attorneys and punish their misconduct.  
People ex rel. Brazen v. Finley
, 119 Ill. 2d 485, 494, 519 N.E.2d 898 (1988).  Supreme Court Rule 753 (134 Ill. 2d R. 753) governs attorney disciplinary proceedings from the investigation stage through the entry of final orders by the supreme court, and it does not provide for petitions for rehearing after the supreme court has entered an order of suspension or for any automatic stay of such an order once issued. 

     In sum, the defendant was wrong in his belief that the filing of his petition on December 14, 1993, stayed the effect of the order suspending him from the practice of law.  Nevertheless, we must still address the effect, if any, that the defendant's mistaken belief had upon his mental state at the time of the offenses alleged in the complaint.  

     A person's mistake as to a matter of law can form the basis of a defense if it negates the mental state element of the offense charged.  
People v. Sevilla
, 132 Ill. 2d 113, 125, 547 N.E.2d 117 (1989); see also 720 ILCS 5/4-8(a) (West 1996).  In this case, our focus is on the question of whether the defendant knew that he was not authorized to practice law at the time he made the representations alleged in the complaint.  "Knowledge generally refers to an awareness of the existence of facts which make an individual's conduct unlaw­ful."  
Sevilla
, 132 Ill. 2d at 126.  Section 4-5 of the Code which defines knowledge states, in pertinent part, that:

     "A person knows, or acts knowingly or with knowl­edge of:

     (a)  The nature or attendant circumstances of his conduct described by the statute defining the offense, when he is consciously aware that his conduct is of such nature or that such circumstances exist.  Knowl­edge of a material fact includes awareness of the substantial probability that such fact exists."  720 ILCS 5/4-5(a) (West 1996). 

     Had the jury been properly instructed on the mental state necessary for the commission of an offense under section 32-5 of the Code and accepted the defendant's testimony that he believed that the filing of his petition on December 14, 1993, stayed the mandate on the order suspending him from the practice of law, they could have found that the State failed to prove that the defendant knew that he was not authorized to practice law on January 7, 1994, the date upon which count I of the complaint charged that he violated the statute.  However, the same reason­ing is not applicable to the offenses charged in counts II through VIII of the complaint which allege violations of the statute on seven occasions from February 24, 1994, through April 19, 1996. 

     The defendant's own admissions in this case make it bla­tantly evident that, whatever mistaken belief he may have had as to the force and effect of the order suspending him from the practice of law by reason of the filing of his petition on December 14, 1993, this belief was dispelled as of January 11, 1994.  The defendant admitted that he received a letter from the clerk of the supreme court informing him that the petition which he filed on December 14, 1993, would be treated by the court as a motion to reconsider the order suspending his right to practice law and as a motion to recall the court's mandate.  The defendant also admitted that he received the clerk's notice informing him that on January 11, 1994, the supreme court had denied both his motion for reconsideration of the order suspending him from the practice of law for three years and his motion to recall the mandate issued thereon.  Consequently, the defendant admitted that upon receipt of the clerk's notice of January 11, 1994, he knew that 1) the supreme court had suspended him from the prac­tice of law for a period of three years, 2) the court's mandate had issued on the order of suspension, 3) the supreme court had refused to reconsider its order, and 4) the supreme court had refused to recall its mandate.

     Our examination of the record leads us to conclude that the instructional error in this case was harmless beyond a reasonable doubt as to the defendant's convictions for false personation of a judicial official on the seven occasions alleged in counts II through VIII of the complaint.  The evidence that the defendant knew that he was no longer authorized to practice law on those occasions is so clear and convincing that no reasonable jury could have found otherwise.  We cannot conclude, however, that the instructional error was harmless as to the defendant's conviction for falsely representing himself to be an attorney authorized to practice law on January 7, 1994, as alleged in count I of the complaint.  

     By reason of the foregoing, we reverse the defendant's conviction for violation of section 32-5 of the Code as alleged in count I of the complaint, and remand this case to the circuit court for a new trial on count I.  We affirm the defendant's convictions for violations of section 32-5 of the Code as alleged in counts II through VIII inclusive of the complaint.  Further, since we are unable to determine from the record what, if any, effect the number of offenses for which the defendant was con­victed had upon the sentence imposed by the trial court, we vacate the defendant's sentence and additionally remand this case to the circuit court to resentence the defendant on the seven convictions which we have affirmed.  

     Affirmed in part, reversed in part, and vacated in part; cause remanded.

HARTMAN and HOURIHANE, JJ., concurring.