**Roy Richard DITTMAN,**
**Plaintiff–Appellant,**

v.

**STATE OF CALIFORNIA; State and Consumer Affairs Agency; Medical Board of California; Acupuncture Committee; and Marilyn Nielsen, Defendants–Appellees.**

No. 98–16385.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 11, 1999.

Filed Sept. 14, 1999

Thomas George Key, Bartholomew, Henry & Key, Tustin, California; Jim Turner, Swankin & Turner, Washington, D.C.; and J. Lee Boothby, Vista, California, for the plaintiff-appellant.

Jill Buttram, David F. DeAlba, Deputy Attorney Generals, Sacramento, California, for the defendants-appellees.

Before: NOONAN, DAVID R. THOMPSON, and GRABER, Circuit Judges.

GRABER, Circuit Judge:

Plaintiff, Roy Dittman, appeals from the district court's grant of summary judgment in favor of defendants the State of California Acupuncture Committee (Committee) and Marilyn Nielsen, whom Plaintiff sued in her individual capacity and in her official capacity as Executive Officer of the Committee. Plaintiff alleged that Defendants' refusal to renew his license to practice acupuncture unless he first disclosed his social security number, as required by California law, violated both his right to due process under the Fourteenth Amendment and § 7(a)(1) of the Privacy Act (uncodified), 5 U.S.C.A. § 552a (note), Pub.L. No. 93–579, 88 Stat. 1896, *et seq.* We affirm.

## BACKGROUND

The facts of this case are undisputed. From 1983 to 1995, Plaintiff was a licensed acupuncturist in the State of California. On September 21, 1995, Plaintiff received a form letter from the Committee notifying him that, under revised § 30 of the California Business and Professions Code,[1] the disclosure of his social security number was a necessary condition to the renewal of his license. The letter warned that, "[i]f you fail to disclose your social security number . . ., your application for initial or renewal license will not be processed." Plaintiff, whose license expired on October 31, 1995, objected to the disclosure requirement.

On July 17, 1996, Plaintiff received a second letter from the Committee, signed by defendant Nielsen. That letter stated that the Committee had received Plaintiff's complaint and that "[a] response will be forthcoming." After hearing nothing for three months, Plaintiff wrote to the Committee on October 4, 1996, demanding immediate issuance of his license. Plaintiff received no response until April 7, 1997, when the Committee informed him that "[t]he Acupuncture Committee is unable to process your request for renewal of your license to practice acupuncture. The requirements for renewal of your license have been explained to you, in detail, on several occasions."

On October 30, 1997, Plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendants' refusal to renew his license violated the due process clause of the Fourteenth Amendment. Plaintiff also alleged that requiring disclosure of his social security number as a condition to licensure violated § 7(a)(1) of the Privacy Act. Plaintiff sought both damages and prospective injunctive relief, i.e., the issuance of his license. The district court granted summary judgment in favor of Defendants as to all claims.

Plaintiff brought this timely appeal.

## STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment. *See San Pedro Hotel Co. v. City of Los Angeles,* 159 F.3d 470, 477 (9th Cir.1998). We likewise review de novo the constitutionali-

---

**1.** That statute provides in relevant part:

(a) Notwithstanding any other provision of law, any board, as defined in Section 22, and the State Bar and the Department of Real Estate *shall at the time of issuance or renewal of the license require that any licensee provide its federal employer identification number if the licensee is a partnership or his or her social security number for all others.*

(b) Any licensee failing to provide the federal identification number or social security number shall be reported by the licensing board to the Franchise Tax Board and, if failing to provide after notification pursuant to paragraph (1) of subdivision (b) of Section 19528 of the Revenue and Taxation Code, shall be subject to the penalty provided in paragraph (2) of subdivision (b) of Section 19528 of the Revenue and Taxation Code.

(c) In addition to the penalty specified in subdivision (b), *a licensing board may not process any application for an original license or for renewal of a license unless the applicant or licensee provides its federal employer identification number or social security number where requested on the application.*

(Emphasis added.)

ty of a statute. *See California Democratic Party v. Jones,* 169 F.3d 646, 647 (9th Cir.1999). "A district court's determinations on questions of law and on mixed questions of law and fact that implicate constitutional rights are also reviewed de novo." *Id.*

## DISCUSSION

### I. MOOTNESS

■ At oral argument, Defendants conceded that they had obtained Plaintiff's social security number through the use of an electronic database. Although Defendants did not assert that their possession of the social security number rendered this case moot, we have an independent obligation to address sua sponte whether this court has subject-matter jurisdiction. *See Queen of Angels/Hollywood Presbyterian Med. Ctr. v. Shalala,* 65 F.3d 1472, 1481 (9th Cir.1995). We conclude that we do.

"Mootness can be characterized as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Cook Inlet Treaty Tribes v. Shalala,* 166 F.3d 986, 989 (9th Cir.1999) (citations and internal quotation marks omitted). "If there is no longer a possibility that an appellant can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction." *Ruvalcaba v. City of Los Angeles,* 167 F.3d 514, 521 (9th Cir.1999).

■ Plaintiff's claims for relief continue to present a live controversy for two reasons. First, as we read § 30, even if Defendants have obtained Plaintiff's social security number through independent means, Defendants do not have the authority to issue a license to him. The statute provides that "a licensing board *may not process* any application for an original license or for renewal of a license *unless the applicant or licensee provides* [his or her] ... social security number where requested on the application." Cal. Bus. & Prof. Code § 30(c) (emphasis added). As is plain, § 30 mandates that *an applicant*

*must disclose* his or her own social security number before the licensing authority may process the request for an application. The social security number must come from the applicant, perhaps to avoid the possibility of mistaken identity. Section 30 does not authorize the licensing authority to act if it acquires the applicant's social security number only from an independent source. Thus, in this case, Defendants may not process Plaintiff's request for renewal using a social security number obtained from an independent source. Were Defendants to do so, they would exceed the scope of their statutory authority.

Moreover, even if Defendants theoretically could have exceeded the scope of their authority by issuing Plaintiff a license, they have not done so. Defendants steadfastly maintain that, unless Plaintiff himself discloses his social security number, he cannot obtain a license under § 30. As discussed above, Defendants' position is consistent with the text of the statute.

In summary, because Defendants, consistent with § 30, continue to deny Plaintiff a license to practice acupuncture, Plaintiff's claims have not been rendered moot by Defendants' acquisition of Plaintiff's social security number.

### II. CLAIMS AGAINST THE COMMITTEE

Plaintiff asserted claims against the Committee under both § 1983 and the Privacy Act. Neither claim is viable.

#### A. *Due Process Claim Under § 1983*

■ Plaintiff's § 1983 claim against the Committee for allegedly violating the due process clause is barred by the Eleventh Amendment. In the absence of a waiver by the state or a valid congressional override, "[u]nder the eleventh amendment, agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court." *Mitchell v. Los Angeles Community College Dist.,* 861 F.2d 198, 201 (9th Cir.1989). The State of California has not waived its

Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court, *see Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) (holding that the California Constitution does not waive immunity from federal court jurisdiction), and the Supreme Court has held that " § 1983 was not intended to abrogate a State's Eleventh Amendment immunity," *Kentucky v. Graham,* 473 U.S. 159, 169 n. 17, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

Indeed, Plaintiff does not contest that the Committee is a governmental agency of the State of California entitled to Eleventh Amendment immunity. Accordingly, the district court properly dismissed Plaintiff's § 1983 claim against the Committee.

## B. *The Privacy Act*

 Section 7(a)(1) of the Privacy Act provides that "[i]t shall be unlawful for any Federal, State or local government agency to deny to any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number." 5 U.S.C.A. § 552a (note). Although the protection afforded by the Privacy Act is broad, its civil remedy provision is far less expansive. This court has held that the private right of civil action created by the Privacy Act, *see* 5 U.S.C. § 552a(g)(1) (providing that a private individual "may bring a civil action against the agency"), "is specifically limited to actions against agencies of the United States Government. The civil remedy provisions of the statute do not apply against private individuals, *state agencies,* private entities, or state and local officials," *Unt v. Aerospace Corp.,* 765 F.2d 1440, 1447 (9th Cir.1985) (citations omitted) (emphasis added); *see also St. Michael's Convalescent Hosp. v. California,* 643 F.2d 1369, 1373 (9th Cir.1981) (holding that the Privacy Act provides no private right of action against "state agencies or bodies"). Accordingly, the Privacy Act provides Plaintiff with no private cause of action against the Committee.

 Plaintiff counters that, even if the Privacy Act itself provides no remedy against the Committee, § 1983 may serve as a vehicle to redress violations of that statute. *See Legal Servs. v. Arnett,* 114 F.3d 135, 138 (9th Cir.1997) ("It is well established that § 1983 provides a private right of action for violations of federal statutes in some instances."). Even if we assume, without deciding, that Plaintiff's argument is correct, the Committee is entitled to sovereign immunity under the Eleventh Amendment, as we already have held. Thus, Plaintiff cannot maintain a Privacy Act claim against the Committee, either directly under § 552a(g)(1) or derivatively through § 1983.

In summary, the district court properly granted summary judgment in favor of the Committee as to all claims.

## III. CLAIMS AGAINST DEFENDANT NIELSEN

### A. *Due Process Claim Under § 1983*

Plaintiff sued defendant Nielsen both in her individual capacity and in her official capacity as Executive Officer of the Committee, for both damages and prospective injunctive relief. Whether Plaintiff stated a cognizable § 1983 claim against Nielsen depends on two factors: (1) the capacity in which Plaintiff sued her and (2) the nature of the relief sought.

#### 1. *Official Capacity*

 The Eleventh Amendment bars actions for damages against state officials who are sued in their official capacities in federal court. *See Graham,* 473 U.S. at 169, 105 S.Ct. 3099. "That is so because ... a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents." *Id.* (citation and internal quotation marks omitted). However, "a federal court, consistent with the Eleventh Amendment, may *enjoin* state officials to conform their future conduct to the requirements of federal law." *Quern v. Jordan,* 440 U.S. 332,

337, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (emphasis added). Accordingly, Plaintiff stated a cognizable due process claim against defendant Nielsen in her official capacity, but only for prospective injunctive relief. We will evaluate the merits of that claim below.

### 2. *Personal Capacity*

"Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Graham*, 473 U.S. at 165, 105 S.Ct. 3099. A public official, however, is not subject to personal liability if she is entitled to qualified immunity. "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citations omitted).

■ This court has held that, when a public official acts in reliance on a duly enacted statute or ordinance, that official ordinarily is entitled to qualified immunity. *See Grossman v. City of Portland*, 33 F.3d 1200, 1210 (9th Cir.1994) (holding that "an officer who reasonably relies on the legislature's determination that a statute is constitutional should be shielded from personal liability"). The existence of an authorizing statute is not dispositive, however. Qualified immunity does not extend to a public official who enforces a statute that is "patently violative of fundamental constitutional principles." *Id.* at 1209.

■ Here, in refusing to renew Plaintiff's license, defendant Nielsen acted pursuant to a duly enacted state statute, Cali-

fornia Business and Professions Code § 30. At the time of the refusal, there was no clear case law in either the federal courts or the state courts of California establishing that the issuance of a professional license may not be conditioned on the licensee's disclosure of her social security number.[2] Moreover, on its face, § 30 does not authorize "official conduct which is patently violative of fundamental constitutional principles." *Grossman*, 33 F.3d at 1209. We therefore conclude that, in the circumstances, it was reasonable for defendant Nielsen to believe that § 30 was constitutional and to enforce its mandates against Plaintiff. Accordingly, Nielsen is entitled to qualified immunity against Plaintiff's claim for damages under § 1983.[3]

### B. *Privacy Act Claim*

■ Plaintiff also alleged that defendant Nielsen's actions violated the Privacy Act. As discussed, "[t]he civil remedy provisions of the [Privacy Act] do not apply against *private individuals*, state agencies, private entities, or *state and local officials.*" *Unt*, 765 F.2d at 1447 (citations omitted) (emphasis added). Accordingly, the Privacy Act provides Plaintiff with no private cause of action against Nielsen in either her personal or her official capacity.

■ Once again, Plaintiff counters that, even if the Privacy Act itself does not provide a private cause of action, § 1983 can serve as a vehicle to redress violations of the Privacy Act. This court has not yet addressed that issue.

■ "It is well established that § 1983 provides a private right of action for violations of federal statutes in some instances. However, § 1983 relief is avail-

---

**2.** Indeed, after the enactment of § 30, one commentator observed that the constitutionality of the statute was *uncertain* under existing case law. *See* Luke Foster, Comment, *Review of Selected 1991 California Legislation*, 23 Pac. L.J. 510, 621–22 (1992) (observing that, depending on the standard used, § 30 may or may not be constitutional).

**3.** The district court did not reach the issue of qualified immunity, because it held that Plaintiff's claim for damages under § 1983 was time-barred. However, this court may affirm on any ground supported by the record. *See Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.*, 810 F.2d 869, 874 (9th Cir. 1987). We express no view as to the district court's statute-of-limitations analysis.

able only if the statute creates enforceable rights and if Congress has not foreclosed such enforcement in the statute itself." *Legal Servs.*, 114 F.3d at 138 (citation omitted). "A statute creates a right enforceable under § 1983 if: (1) the statute was intended to benefit the plaintiffs; (2) the statute imposes a binding obligation on the government unit rather than merely expressing a congressional preference for a certain kind of conduct, and; (3) the interest asserted by the plaintiff is not so vague or amorphous that it is beyond the competence of the judiciary to enforce." *Id.*

Section 7(a)(1) of the Privacy Act satisfies each of the foregoing requirements. *First,* Congress clearly enacted § 7(a)(1) to benefit individuals such as Plaintiff. The purpose of the Privacy Act, Congress stated, was "to provide certain safeguards for an individual against an invasion of personal privacy." 5 U.S.C.A. § 552a (note), Pub.L. No. 93–579, § 2. Toward that end, § 7(a)(1) prohibits "any Federal, State or local government agency to deny *any individual* any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number," except as otherwise provided under the Privacy Act. 5 U.S.C.A. § 552a (note) (emphasis added). The breadth of § 7(a)(1)'s protection encompasses the privacy interest asserted by Plaintiff here.

Second, the statutory obligation imposed on governmental bodies is clear: A governmental body may not deny any individual any right, benefit, or privilege because she refuses to disclose her social security number, unless otherwise permitted by law.

Third, the judiciary is capable of enforcing the interest asserted by Plaintiff. The text of § 7(a)(1) and, more generally, the Privacy Act itself, is not so "vague and amorphous such that it is beyond the competence of the judiciary to enforce." *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 509, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990); *cf. Legal Servs.,* 114 F.3d at 139

(holding that a statute mandating that an agency select the "best" entity able to provide a service was too vague and amorphous to enforce under § 1983).

 Our inquiry does not end there, however. "Even if a plaintiff demonstrates that a federal statute creates an individual right, there is only a rebuttable presumption that the right is enforceable under § 1983." *Blessing v. Freestone,* 520 U.S. 329, 341, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997). The question then becomes whether Congress "specifically foreclosed a remedy under § 1983." *Id.* (citation and internal quotation marks omitted). "Congress may do so expressly, by forbidding recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Id.*

In *Polchowski v. Gorris,* 714 F.2d 749 (7th Cir.1983), the Seventh Circuit confronted an issue similar to the one presented here. There, the question was whether § 1983 provided a remedy against a state official for allegedly violating 42 U.S.C. § 3789g(a), which prohibits governmental entities from disclosing certain statistical information. The Seventh Circuit held that § 1983 could not be used to remedy alleged violations of § 3789(g) by state or local officials. The court's reasoning is worthy of quotation in full.

[W]e believe that Congress has foreclosed the use of Sec.1983 as a remedy. Congress, by enacting the Privacy Act of 1974, has provided comprehensive private remedies for unwarranted disclosures of personal information, including the type of information disclosed here. This act, however, applies only to agencies of the United States Government. Congress, when considering this legislation, specifically limited its scope to federal agencies. Indeed, the bill, as originally introduced, contained a remedy for improper disclosures by state authorities; these provisions were deleted, however, because of the uncertain effect of

such a provision and because Congress felt that it lacked the necessary information for devising a remedial scheme in this context.

Congress, by limiting the scope of Sec. 552a, has provided unequivocal and persuasive evidence that it intended "to foreclose private enforcement" of Sec. 3789g(a) against state or local officials who make unwarranted disclosures of statistical information.

*Id.* at 752 (citations and footnote omitted).

The Seventh Circuit's reasoning applies squarely to the present case, and we are persuaded by it. Although the prohibitions of § 7(a)(1) apply to all governmental entities, including state and local governments, by limiting the scope of the Privacy Act's civil remedy provision, 5 U.S.C. § 552a(g), Congress clearly intended to "foreclose private enforcement" against any entity *other than* federal agencies. Admittedly, this reasoning leaves individuals, such as Plaintiff, without a means of enforcing § 7(a)(1) against state and local officials. However, were we to hold that Plaintiff could pursue a Privacy Act claim under § 1983, we would circumvent the intent of Congress that the rights secured by the Privacy Act be enforceable only against federal agencies.

■ In summary, we conclude that a private plaintiff may not maintain an action against a state official—either in her official or her individual capacity—under § 1983 to remedy alleged violations of § 7(a)(1) of the Privacy Act. The district court therefore properly granted summary judgment in favor of defendant Nielsen as to Plaintiff's claim under the Privacy Act.

### C. *The Merits of Plaintiff's Substantive Due Process Claim*

■ In the end, Plaintiff's only viable claim is one for prospective injunctive relief against defendant Nielsen in her official capacity for allegedly violating the due process clause of the Fourteenth Amendment. "A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phoenix,* 24 F.3d 56, 62 (9th Cir.1994).

In an early line of cases, the Supreme Court recognized "that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment." *Conn v. Gabbert,* 526 U.S. 286, 119 S.Ct. 1292, 1295–96, 143 L.Ed.2d 399 (1999) (citing *Dent v. West Virginia,* 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889), and *Truax v. Raich,* 239 U.S. 33, 41, 36 S.Ct. 7, 60 L.Ed. 131 (1915)); *see also Board of Regents v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (stating that the liberty interest guaranteed by the Fourteenth Amendment includes the right "to engage in any of the common occupations of life") (citation and internal quotation marks omitted). This court similarly has observed that "it is well-recognized that the pursuit of an occupation or profession is a protected liberty interest that extends across a broad range of lawful occupations." *Wedges/Ledges,* 24 F.3d at 65 n. 4. Although the precise contours of that liberty interest remain largely undefined, the Supreme Court observed recently that the line of authorities establishing the liberty interest "all deal[t] with a complete prohibition of the right to engage in a calling," and not merely a "brief interruption" in one's ability to pursue an occupation or profession. *Conn,* 119 S.Ct. at 1296.

■ Section 30's disclosure requirement imposes the type of "complete prohibition" on entry into a profession that implicates a person's liberty interest in pursuing an occupation or profession of her own choice. As illustrated by the facts of this case, the operation of § 30 is clear: If a person seeking an acupuncture license refuses to disclose her social security number, she may not practice that profession in the State of California. Thus, like minimal education and testing requirements, which California also demands of prospective acupuncturists, *see*

Cal. Bus. & Prof.Code § 4938 (stating initial requirements of licensure), § 30 operates as a complete barrier to entry into the profession of acupuncture.

■ Having concluded that Plaintiff's due process claim is predicated on a protected liberty interest, the question then arises: To what degree of constitutional scrutiny is the regulation subject? The Supreme Court answered that question in a case involving admission to the practice of law, *Schware v. Board of Bar Exam'rs*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). There, the Court held that "[a] State cannot exclude a person from the practice of law *or from any other occupation* in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment." *Id.* at 238–39, 77 S.Ct. 752 (emphasis added). The Court stated that, consistent with the Fourteenth Amendment, "[a] State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but *any qualification must have a rational connection with the applicant's fitness or capacity to practice law.*" *Id.* at 239, 77 S.Ct. 752 (emphasis added). From *Schware* emerges the fundamental principle that "[r]egulations on entry into a profession, as a general matter, are constitutional if they 'have a rational connection with the applicant's fitness or capacity to practice' the profession." *Lowe v. SEC*, 472 U.S. 181, 228, 105 S.Ct. 2557, 86 L.Ed.2d 130 (1985) (White, J., concurring) (quoting *Schware*, 353 U.S. at 239, 77 S.Ct. 752).

Defendants contend, and the district court agreed, that § 30's disclosure requirement withstands constitutional scrutiny, because it is rationally related to the legitimate state interests of collecting taxes and child support. *See* Cal. Bus. & Prof.Code § 30(f).[4] The Committee concedes that it uses the social security numbers of applicants for no other purpose.

Recently, this court addressed whether the policy of the State of California to refuse to renew drivers' licenses unless the driver first discloses her social security number violates the Free Exercise Clause. *See Miller v. Reed*, 176 F.3d 1202 (1999). In holding that California's policy did *not* violate the right of free exercise, this court observed that California's disclosure policy was "rationally related to California's legitimate interests in locating the whereabouts of errant parents for purposes of carrying out child support programs, collecting tax obligations, and collecting amounts overdue and unpaid for fines, penalties, assessments, bail, and vehicle parking penalties." *Id.* at 1207.

Although related to the present case, *Miller* is not controlling. In *Miller*, the applicable constitutional inquiry was whether the authorizing statute was "a *rationally based*, neutral law of general applicability [that] does not violate the right to free exercise of religion even though the law incidentally burdens a particular religious belief or practice." *Id.* at 1206 (citation omitted) (emphasis added). In short, the court used a "pure" rational-basis test to evaluate the challenged statute. Here, by contrast, the relevant test requires something more. As *Schware* makes clear, although a state may regulate entry into a profession, any such regulation must be rationally related, not merely to a legitimate state interest, but more specifically to the "the applicant's fitness or capacity to practice" the profession itself. *Schware*, 353 U.S. at 239, 77 S.Ct.

---

**4.** That statute provides:

It is the intent of the Legislature in enacting this section to utilize the social security account number ... for the purpose of establishing the identification of persons affected by state tax laws and for purposes of compliance with Section 11350.6 of the Welfare and Institutions Code and, to that end, the information furnished pursuant to this section shall be used exclusively for those purposes. Section 11350.6 of the Welfare and Institutions Code in turn deals with the enforcement of child support orders or judgments and the authority to withhold issuance or renewal of a license.

752. Thus, Defendants' and the district court's analysis of whether § 30's disclosure requirement is rationally related to a legitimate state interest is incomplete. The proper inquiry is whether the disclosure requirement and its consequent revelation of an individual's delinquency of paying taxes or child support obligations bears a rational relationship to her fitness or capacity to practice acupuncture.

■ In addressing that issue, we first must ask ourselves a threshold question: In applying the test under *Schware*, is this court bound by the written reasons that the California state legislature articulated for enacting § 30, or· may this court consider any hypothetical basis on which the legislature might have acted? If we are bound by the stated reason for the enactment of § 30, we may ask only whether the state's interest in collecting taxes and child support is rationally related to an applicant's fitness or capacity to practice acupuncture. *See* Cal. Bus. & Prof.Code § 30(f) (stating the legislative purpose of § 30); *see also, e.g.,* California State Assembly Committee on Judiciary, Committee Report on A.B. No. 1394, 1991–92 Reg. Sess. (1991) ("The author states that this· bill provides additional enforcement tools for collection of support and additional incentive to obligors to pay their support."). If not, then we may take a more expansive view of the purposes of § 30 in evaluating its constitutionality.

■ Where, as here, a plaintiff relies on substantive due process to challenge a legislative act that does not infringe on a fundamental right,[5] the plaintiff bears a heavy burden. "[W]e do not require that the government's action actually advance its stated purposes, but merely look to see whether the government *could* have had a legitimate reason for acting as it did." *Halverson v. Skagit County*, 42 F.3d 1257, 1262 (9th Cir.1995) (citation and internal

quotation marks omitted) (emphasis in original). In other words, we need to determine only whether the legislation has a "conceivable basis" on which it might survive constitutional scrutiny. *See Lupert v. California State Bar*, 761 F.2d 1325, 1328 (9th Cir.1985) (applying the "conceivable basis" standard to a challenge to the California State Bar's requirement that law students attending unaccredited schools take and pass examinations that are not required of students attending accredited institutions). It is therefore irrelevant for constitutional purposes whether, at the time the legislature acted, it articulated the "conceivable basis" for the legislation. *See Kim v. United States*, 121 F.3d 1269, 1274 (9th Cir.1997) ("The government need not state its purposes at the time it acts. It is sufficient that the government could have had a legitimate reason for acting as it did."). Rather, "[t]he plaintiff must establish that the facts on which the legislature may have relied could not reasonably have been conceived as true by the governmental decisionmaker." *Lupert*, 761 F.2d at 1328.

■ Here, the legislature could have had in mind at least two rational bases for relating § 30's disclosure requirement to a person's capacity and fitness to practice acupuncture. First, the state might have enacted § 30 to ensure that acupuncturists have the financial wherewithal to answer liability claims asserted by patients. In an analogous context, the California state legislature has recognized that an "acupuncture corporation" (that is, one or more licensed acupuncturists who practice in a corporate form) may be required to demonstrate its capacity to pay claims made by patients. *See* Cal. Bus. & Prof.Code § 4979 (stating that the Committee may adopt and enforce regulations requiring an acupuncture cor-

---

5. We emphasize that the Supreme Court has recognized only that the *liberty* component of the Fourteenth Amendment's Due Process Clause "includes some generalized due process right to choose one's field of private employment." *Conn v. Gabbert*, 526 U.S.

286, 119 S.Ct. 1292, 1295–96, 143 L.Ed.2d 399 (1999). The Court has never held that the "right" to pursue a profession is a *fundamental* right, such that any state-sponsored barriers to entry would be subject to strict scrutiny.

poration to "provide adequate security by insurance or otherwise for claims against it by its patients arising out of the rendering of professional services"). That statute evidences a legislative recognition of the importance of financial accountability to patients. Arguably, § 30 is another means for all acupuncturists (not merely those who practice in a corporate setting) to demonstrate financial responsibility; an acupuncturist who is incapable of paying, or refuses to pay, child support or taxes is less likely to satisfy potential liabilities owed to patients. Concededly, the "fit" between the state's interest in ensuring the financial accountability of acupuncturists and the means that it has adopted is imperfect. However, when a fundamental right is not at stake, "the law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Williamson v. Lee Optical, Inc.*, 348 U.S. 483, 487–88, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

 In addition, there is a second rational reason for requiring that an applicant, such as Plaintiff, be current in child support and tax obligations as a condition of licensure: A state may require good moral character as a qualification for entry into a profession, when the practitioners of the profession come into close contact with patients or clients. *See Schware*, 353 U.S. at 239, 77 S.Ct. 752 ("A State can require high standards of qualification, such as good moral character ..., before it admits an applicant to the bar."). As one court has observed, in the context of the legal profession, the "[f]ailure to honor legal commitments and obligations is a proper ground for refusing to issue a certificate as to possession of the requisite character and moral fitness." *In re Beasley*, 243 Ga. 134, 252 S.E.2d 615, 617 (1979); *see also People v. Cully*, 286 Ill.App.3d 155, 221 Ill.Dec. 593, 675 N.E.2d 1017, 1024 (1997) (stating, in *dictum*, that, "[i]f the licensee culpably does not repay [his student] loan, this calls his moral character into question

and could constitute conduct that defrauds or harms the public"). Admittedly, there is no express moral character component to the licensing of acupuncturists in the State of California. *Compare* Cal. Bus. & Prof.Code § 6060 (providing that an applicant to the California State bar must possess "good moral character") *with* Cal. Bus. & Prof.Code § 4938 (providing no moral character requirement for acupuncturists). However, the legislature need not have made the requirement of good moral character statutorily explicit outside of § 30 itself. We recognize that, as a general matter, California law provides that a "license shall not be denied, suspended, or revoked on the grounds of a lack of good moral character or any similar ground relating to an applicant's character, reputation, personality, or habits." Cal. Bus. & Prof.Code § 475(c). That statute is not controlling, however, because § 30 is a later, more specific statute addressing behavior that the California legislature deemed unworthy of acupuncturists. *See Hellon & Assocs. v. Phoenix Resort Corp.*, 958 F.2d 295, 297 (9th Cir.1992) (stating that, if two statutes conflict, the "later and more specific statute usually controls the earlier and more general one"). As noted, it is sufficient that the legislature rationally could have believed that moral character is related to an individual's fitness and capacity to practice acupuncture. Through the enactment of § 30, the state imposed an implicit moral-character requirement for acupuncturists, as well as all licensees covered by that statute.

In summary, we conclude that, consistent with *Schware*, § 30's disclosure requirement is rationally related to Plaintiff's fitness or capacity to practice acupuncture. The wisdom of that requirement is not for us to judge. For in the end, "it is for the legislature, not the courts, to balance the advantages and disadvantages of ... new requirement[s]." *Williamson*, 348 U.S. at 487, 75 S.Ct. 461. Defendant Nielsen need not issue to Plaintiff an acupunc-

ture license unless he first discloses his social security number.

AFFIRMED.