In re MAXIMUS COMPUTERS, INC., Debtor.

COM–1 Info, Inc.; Djit Ong; Henry Salim; Celina Lieu, Appellants,

v.

Edward Wolkowitz, Chapter 7 Trustee; Gibbs, Giden, Locher & Turner, LLP, Appellees.

BAP Nos. CC–00–1657–KMOB, CC–00–1658–KMOB, CC–01–1183–KMOB.
Bankruptcy No. LA 00–11124 ER.
Adversary No. LA 00–02301 ER.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 19, 2001.

Filed May 8, 2002.

J. Randy Dorcy, Law Offices of J. Randy Dorcy, Van Nuys, CA, for COM–1 Info, Inc.; Djit Ong.

Rocky W. Dorcy, Law Offices of Rocky W. Dorcy, Encino, CA, for Henry Salim and Celina Lieu.

Robert P. Judge, Gibbs, Giden, Locher & Turner, LLP, Los Angeles, CA, for Edward Wolkowitz, Chapter 7 Trustee.

Before: KLEIN, MONTALI and BRANDT, Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge.

These interlocutory appeals constitute an attempt by defendants in a fraudulent transfer action that is being prosecuted for the benefit of the estate to disqualify opposing counsel because a creditor is paying the counsel's fees.

In an effort to derail state court fraud litigation against them, defendant corporate insiders had their defunct corporation file a chapter 7 bankruptcy in which there can be no discharge. The plaintiff's state court counsel was then engaged to prosecute a bankruptcy fraudulent transfer action. The defendants appeal two orders parrying attempts to rid themselves of their nemesis.

The appealed orders ratified employment as special counsel under 11 U.S.C. § 327 and, twice, refused to disqualify the firm for having its fees paid by the creditor client that it still represents and that opposed a nuisance-value settlement that the defense attempted to negotiate directly with the trustee behind the back of opposing counsel.

Although we REVERSE the employment under § 327 as procedurally defective, we merely VACATE the orders refusing to disqualify counsel and REMAND for clarification of whether the orders reflect authorization under 11 U.S.C. § 503(b)(3)(B) for a creditor to sue in the name of the trustee, using its own lawyer, to recover property for the benefit of the estate.

We publish to clarify that § 503(b)(3)(B) retains vitality: first, a creditor authorized by the court per § 503(b)(3)(B) to recover property for the

estate may sue in the trustee's name without counsel being employed under § 327 and without counsel being "disinterested"; second, such a creditor has standing; and, third, since §§ 327 and 503(b)(3)(B) are not mutually exclusive, decisions affirming § 327 employment of a creditor's lawyer should be understood as permitting, but not requiring, § 327 employment when § 503(b)(3)(B) permission would suffice.

## FACTS

The procedural context of these consolidated and related appeals requires that we accept the plaintiff's allegations as true. When we do so, this appeal smacks of a "strategic" effort by defendants to divert attention from the merits of allegations that they stole about $7 million by looting a corporation.

A number of wholesale electronics suppliers, including Arrow Electronics, Inc. ("Arrow"), were bilked out of about $7 million in computer microchips sold to Maximus Computers, Inc. ("Maximus"), in a fraud perpetrated by Maximus' owners (Henry Salim and his spouse, Celina Lieu), working in league with Salim's brother (Djit Ong) and a corporation owned by Ong.

The structure of the fraud, which occurred in a period of about four weeks in 1999, was simple. Maximus and Salim had preexisting trade credit agreements with vendors who were induced to ship microchips to Maximus on various credit terms in September and October 1999, including tendering of checks to be issued upon delivery. Maximus received the microchips, issued the checks, immediately stopped payment on the checks, and transferred the microchips to entities controlled by Salim family members before the vendors could reclaim the goods.

For example, Arrow shipped microchips to Maximus on October 1, 1999, on the promise by Salim and Maximus that postdated checks for payment would be delivered upon receipt. On October 19, Maximus issued and delivered two checks signed by Lieu totaling $1,225,000 postdated to November 1, 1999. On October 25, Arrow learned from two other suppliers that Maximus had stopped payment on checks to them. On October 27, Arrow presented the checks to the drawee bank, which notified Arrow that Maximus had stopped payment. Arrow sued in state court on November 2, 1999, alleging multiple counts including fraud and conversion. *Arrow Elec., Inc. v. Maximus Computers, et al.*, Los Angeles County Super. Ct. (No. KC031873, filed 11/2/99).

Arrow was represented in the state court action by the law firm of Gibbs, Giden, Locher & Turner, LLP ("GGL & T").

By the time that Maximus filed a voluntary chapter 7 case in January 2000, all Maximus assets had been transferred to various entities and individuals related to Salim.

Arrow offered the services of GGL & T to the chapter 7 trustee, Edward Wolkowitz, to prosecute the bankruptcy version of the fraudulent transfer action with the promise that fees would be due from the estate only if the action was successful.

The trustee applied for an order approving employment of GGL & T as special counsel to recover the microchips or their value, presenting employment application papers noting that GGL & T represented Arrow in the state court action, which familiarity was said to make GGL & T the logical litigation counsel for the estate, that GGL & T would be compensated by the estate only if successful, and that any compensation would be based upon the services rendered to the estate and submitted for court approval.

The application disclosed neither the fact that Arrow was paying GGL & T's fees, nor the terms of that compensation, nor that GGL & T would continue to represent Arrow simultaneously with the trustee. The court approved the application on May 11, 2000.

GGL & T filed an adversary proceeding in the name of the trustee in July 2000, against Salim, Lieu, Ong, and Ong's corporation, Com–1 Info, Inc., alleging causes of action for, among others, fraud, breach of contract, conversion and conspiracy and requesting that the court avoid the allegedly fraudulent transfers, avoid preferences, and marshal assets.

In September 2000, a proposed amended employment order was tendered to the court without an accompanying application. The amendment's substance was: "By this Amended Order, the Court acknowledges that the fees of [GGL & T] are currently being paid by ARROW ELECTRONICS, INC., a creditor." There was no disclosure of what those fees were and no verified statement from GGL & T articulating the precise continuing relationship with Arrow.

Salim, Lieu, Com–1, and Ong objected to the amended employment order and made a motion to disqualify GGL & T.

The court overruled the objection, signed the amended order, and refused to disqualify GGL & T by memorandum decision dated November 7, 2000.

Our first two appeals were filed by Salim and Lieu (No. CC–00–1657) and Com–1 and Ong (No. CC–00–1658) from the November 7 order, with motions for leave to appeal, which we granted.

Our third appeal, No. CC–01–1183, is from an order entered April 11, 2001, again refusing to disqualify GGL & T after it allegedly interfered with a potential settlement that Salim and Lieu had negotiated with the trustee without GGL & T's knowledge.

The trustee, who is a partner in a law firm ("RD & W"), employed RD & W as his "general counsel." Rocky Dorcy, counsel for Salim and Lieu, negotiated with the trustee through RD & W without telling GGL & T and, Dorcy says, reached a $137,000 settlement.

GGL & T learned of the putative settlement when Dorcy refused to appear at a deposition. The fraud victims, including Arrow, expressed dismay to the trustee. This creditor opposition led the trustee to forsake the settlement.

The frustrated appellants reacted by filing two motions. The first (not involved in this appeal) was a motion to enforce the putative $137,000 settlement. The other was a second motion to disqualify GGL & T, on the premise that GGL & T had an actual conflict with the estate because it continued to represent Arrow, which opposed the trustee's putative settlement of the adversary proceeding in which GGL & T was representing the trustee.

The trustee opposed both motions, denying he had agreed to settle and adding that he had since learned of another $2.27 million in potentially avoidable transfers to a Salim relative.

The bankruptcy court denied the second motion to disqualify by order entered April 11, 2001. We granted leave to appeal.

## JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. §§ 1334 and 157(b)(1). We have jurisdiction under 28 U.S.C. § 158(a)(3).

## ISSUES

Although the appellants' joint brief specifies twenty-four questions, they boil down to three issues.

1. Whether GGL & T was correctly employed by the trustee as special litigation counsel under 11 U.S.C. § 327 while concurrently representing a creditor.

2. Whether GGL & T's creditor client is eligible and has standing to prosecute a fraudulent transfer action in the name of the trustee under 11 U.S.C. § 503(b)(3)(B).

3. Whether GGL & T's representation of plaintiff is affected by a disqualifying conflict of interest.

## STANDARD OF REVIEW

 Interpretations of statute are questions of law reviewed de novo. *Tighe v. Celebrity Home Entm't, Inc. (In re Celebrity Home Entm't, Inc.)*, 210 F.3d 995, 997 (9th Cir.2000). Orders on employment and disqualification of professionals are reviewed for abuse of discretion. *First Interstate Bank v. CIC Inv. Corp. (In re CIC Inv. Corp.)*, 175 B.R. 52, 53 (9th Cir. BAP 1994). It is an abuse of discretion to apply the wrong legal rule. *Gschwend v. Markus (In re Markus)*, 268 B.R. 556, 559 (9th Cir. BAP 2001).

We do not reverse for errors not affecting substantial rights of the parties and may affirm for any reason supported by the record. 28 U.S.C. § 2111; Fed. R.Civ.P. 61, *incorporated by* Fed. R. Bankr.P. 9005; *Dittman v. California*, 191 F.3d 1020, 1027 n. 3 (9th Cir.1999); *Polo Bldg. Group, Inc. v. Rakita (In re Shubov)*, 253 B.R. 540, 547 (9th Cir. BAP 2000).

## DISCUSSION

We begin with the procedural error in the employment of GGL & T that necessitates vacating the employment order. Then we turn to the question whether the employment error was harmless with respect to the refusal to disqualify counsel.

While the facts fit the pattern that would permit GGL & T, regardless of whether it is "disinterested," to act under § 503(b)(3)(B) as counsel for a creditor authorized by the court to sue in the trustee's name to recover property transferred by the debtor, the trial court must clarify GGL & T's status before we would affirm.

### I

 There is a fundamental procedural defect in the employment of GGL & T as special litigation counsel under § 327.

Concurrent representation of trustee and creditor can be permitted if, and only if, it is within the § 327(c) safe harbor, which requires that other creditors and the U.S. trustee have the opportunity to object. If there is objection, then the court must determine whether an actual conflict of interest exists.

The statutory opportunity to object prescribed by § 327(c) necessitates disclosure of appropriate information be available to those who are entitled to object. To this end, employment application papers must include full disclosure of, among other things, "all of the person's connections with" creditors and that the application be accompanied by a verified statement of the person to be employed setting forth the connections with, among others, creditors. Fed. R. Bankr.P. 2014(a).

GGL & T has never made the requisite disclosure in the requisite form. The initial application refers to GGL & T's representation of Arrow in the pre-bankruptcy litigation and represents that GGL & T's compensation will be based on the nature, extent, and value of services rendered to the estate, will be determined by the court as an ordinary fee application, and that there would be no fee liability in excess of

actual recovery.[1] The accompanying declaration represents that GGL & T's sole connection with Arrow is representation in the stayed state court action, that GGL & T has not received a monetary retainer, and that any fee award will not exceed any recovery.[2]

There is no reference to any continuing representation of Arrow by GGL & T or to Arrow as paying GGL & T's fees for prosecuting the bankruptcy fraudulent transfer action. Nor is there any indication of how Arrow's payment of GGL & T's fees will impact fee applications that GGL & T says it will make.

On September 20, 2000, more than four months after the initial May 11 employment order, GGL & T lodged a proposed amended order, bearing the caption of the fraudulent transfer adversary proceeding, which is identical to the May 11 order entered in the parent bankruptcy case except for the following language: "By this Amended Order, the Court acknowledges that the fees of [GGL & T] are currently being paid by ARROW ELECTRONICS, INC., a creditor." No supporting application or declaration accompanied the proposed amended order.

This triggered the appellants' unsuccessful objection to employment and first motion to disqualify GGL & T.

■ The facts that Arrow is paying GGL & T's fees for purportedly representing the trustee and that GGL & T continues to represent Arrow are "connections" with a creditor within the meaning of Rule 2014(a) that must be disclosed in the em-

---

1. The pertinent portions of the employment application are:

2. ...The Firm [GGL & T], prior to the filing of the petition in this matter filed a state court action against the Debtor on behalf of ARROW ELECTRONICS, INC. ("ARROW"). Mr. Griffin is uniquely familiar with the issues in this case and[,] therefore, is in the best position to litigate issues concerning the transfer of the Debtor's assets....

5. The Firm's compensation will be based upon the nature, extent, and value of the services it renders to the estate. All fees will be submitted to the Court for approval in accordance with the Bankruptcy Code and Rules, and the requirements of the office of the United States Trustee. *The parties understand and agree that the Chapter 7 Estate shall not be liable to the proposed Special Counsel unless there is a recovery of the Estate's assets in an amount at least equal to the fees and costs requested.*

7. To the best of the Debtor's [sic] knowledge, neither [GGL & T] nor any of its attorneys has a connection with any party in interest, its attorneys or accountants, other than as set forth herein and in the accompanying declarations. Except as may be set forth in this Application and [accompanying Declaration], to the best of Applicant's knowledge, neither [Declarant]

nor any of the Firm's attorneys represent any interest adverse to the Estate, and [GGL & T] and its attorneys are disinterested persons under § 101(14) of the Bankruptcy Code.

Application to Employ [GGL & T] as Special Litigation Counsel (emphasis supplied).

2. GGL & T's declaration represents, in pertinent parts:

4. ... To the best of my knowledge [GGL & T] has no affiliation with the Debtor, creditors, or any other party in interest, the United States Trustee or any person employed by the office of the United States Trustee, *except for my representation of ARROW in the above-referenced Superior Court litigation....*

7. I have not received a monetary retainer in this case. I understand and [have] agreed that my Firm's fees in connection with this matter will be submitted to the Court for approval in accordance with the Bankruptcy Code and Rules, and the requirements of the office of the United States Trustee. Further, *unless there is a recovery of the Estate's assets which I believe were fraudulently conveyed away in an amount at least equal to my fees and costs, the Chapter 7 Estate shall not be liable to the Firm.*

Declaration of Gerald A. Griffin (emphasis supplied).

ployment application and in the verified statement that accompanies the application. Fed. R. Bankr.P. 2014(a); *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park–Helena Corp.),* 63 F.3d 877, 880–82 (9th Cir.1995); *In re B.E.S. Concrete Prods., Inc.,* 93 B.R. 228, 237 (Bankr. E.D.Cal.1988); *United States v. Azevedo (In re Azevedo),* 92 B.R. 910, 910–11 (Bankr.E.D.Cal.1988).

■ Moreover, creditor payment of fees and the continuing representation are material to both the employment and the analysis of the § 327(c) safe harbor. Such situations typically raise issues relating to the lawyer's ethical duty of loyalty and the identity of the client. They also potentially affect the eventual fee awards that counsel says it will seek. *In re Park–Helena Corp.,* 63 F.3d at 882.

These are matters that might·matter to entities entitled to object and trigger the § 327(c) actual conflict analysis.

While there are established solutions for such problems, they must be dealt with explicitly in advance of the employment and be fully disclosed. They cannot be swept under the carpet.

There is no declaration or application that addresses the "connections" with Arrow relating to payment of GGL & T fees and continuing representation.

The minimal recital relating to a material matter that was made in an "amended" order tendered to the court without supporting explanation does not satisfy Rule 2014(a). Nor does it comport with the statutory notice requirement of § 327(c). Hence, the court acted prematurely when

it did the "actual conflict" analysis necessary to the § 327(c) safe harbor.

The present § 327 employment order must be REVERSED. If, in further proceedings in the trial court, the United States trustee or a creditor with standing objects after GGL & T has presented the requisite application papers, then it will become appropriate to assess the question of "actual conflict of interest" within the meaning of the § 327(c) safe harbor.

## II

■ In attacking the court's refusal to disqualify GGL & T, appellants ask us to hold that the firm must be disqualified because it is not "disinterested" under § 327.

While we agree that § 327 imposes the "disinterested" requirement on all general and special counsel employed under that section (except debtor's counsel employed under the § 327(e) exception [3]), it does not follow that GGL & T must be disqualified if it is not "disinterested."

■ We may affirm the court's refusal to disqualify counsel for any reason supported by the record. *Dittman v. California,* 191 F.3d at 1027 n. 3; *In re Shubov,* 253 B.R. at 547.

Moreover, we have an independent duty to disregard error that does not affect the substantial rights of the parties. 28 U.S.C. § 2111; Fed.R.Civ.P. 61, *incorporated by* Fed. R. Bankr.P. 9005; 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 2888 (1995). In

**3.** That exception provides:
 (e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate,

and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.
11 U.S.C. § 327(e).

other words, we must explore the possibility that any error is harmless.

Here, the record presents the pattern of § 503(b)(3)(B)'s authorization for creditors to sue in the trustee's name to recover, for the estate's benefit, property that the debtor transferred or concealed.

### A

■ Section 503(b)(3)(B) carries forward the long-settled authority under former Bankruptcy Act § 64a(1) for creditors to sue in the name of the trustee to recover property for the benefit of the estate and to be compensated as administrative expenses. *In re Godon, Inc.*, 275 B.R. 555, 561–63 (Bankr.E.D.Cal.2002).

■ A creditor acting under that authority with the court's prior permission has statutory standing, not some form of non-statutory standing. *Id.*, 275 B.R. at 563–66.

■ Sections 503(b)(3)(B) and 327 are not necessarily mutually exclusive, but the theories of compensation are different. Professionals acting under § 503(b)(3)(B) have the authorized creditor as a client, may be paid by that client (with the client bearing the risk of not being reimbursed under § 503(b)(4)) and need not be "disinterested" as required by § 327(a). *Id.*, 275 B.R. at 566–68; 4 L. KING, ET AL., COLLIER ON BANKRUPTCY § 503.11[4] (15th ed. rev. 2000).

■ The court acts as gatekeeper, polices any dysfunction that arises as between authorized creditor and the trustee, and retains the power to scrutinize compromises. Fed. R. Bankr.P. 9019(a); *Godon*, 275 B.R. at 569–70.

The Bankruptcy Code and the Federal Rules of Bankruptcy Procedure are silent about the mechanism for obtaining prior court authorization for creditor recovery actions.

### B

Although this case generally fits within the § 503(b)(3)(B) creditor recovery model, neither the trustee nor GGL & T expressly invoked it.[4] If they had done so, we would affirm.

While the bankruptcy court's approval of the amended employment order that explicitly recognized Arrow was paying GGL & T's fees, together with its ensuing refusal to disqualify the firm, could be construed as a § 503(b)(3)(B) authorization on which we could premise a finding of harmless error, the prudent course is to ask the bankruptcy court to be clear about the basis on which GGL & T is proceeding.

The key point about § 503(b)(3)(B) at this juncture is that its mere existence belies appellants' argument that being "not disinterested" or that payment of counsel by a creditor requires disqualification. Since the "disinterested" requirement of § 327 does not apply in § 503(b)(3)(B) creditor suits, it follows that lack of "disinterest" is no reason for disqualification.

Likewise, the fact that § 503(b)(3)(B) authorizes a creditor to use its own lawyer to recover property for the benefit of the estate, once the court has given its permission, compels the conclusion that the authorized creditor's lawyer may be paid by its client without fear of disqualification on that account.

Thus, on the question of disqualification of counsel acting under § 503(b)(3)(B), it would be irrelevant whether GGL & T is

---

**4.** In contrast, the counsel and trustee in *Godon* actually agreed to use § 503(b)(3)(B).

*Godon,* 275 B.R. at 561.

"disinterested" and irrelevant that Arrow is paying GGL & T's fees.

The apparent congruence of the facts with the § 503(b)(3)(B) creditor recovery model tends to support the court's denial of the motions to disqualify GGL & T, even though GGL & T was not validly employed to represent the trustee. Nevertheless, without an explicit determination by the court invoking § 503(b)(3)(B) and clarifying who is GGL & T's client, we will not actually affirm the denials of the disqualification motions.

In short, no matter how defective the employment of GGL & T may have been under § 327, the court could permit GGL & T to prosecute the adversary proceeding as counsel to Arrow on the basis of § 503(b)(3)(B) permission to recover property for the benefit of the estate. We cannot say that the court abused its discretion in refusing to disqualify GGL & T, nor are we willing to affirm without clarification of GGL & T's precise status. Accordingly, we will VACATE and REMAND.

### III

In deciding this appeal, we have treated the appellants' possible lack of standing as a non-jurisdictional issue that has been waived by not having been raised. *Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 900–01 (9th Cir.2000); *Godon*, 275 B.R. at 564–66 (distinguishing among "prudential standing," "statutory standing," "appellate standing," and "constitutional standing").

Nevertheless, because it may have implications for future attempts to pursue diversionary strategic appeals in this case, we note that appellants have not established that they have "appellate standing," which requires that they be "persons aggrieved" or be "directly and pecuniarily affected" by their adversary's choice of counsel. Without such a demonstration, an appellate court would be justified in refusing to hear them. *Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C, Inc.)*, 177 F.3d 774, 777–78 (9th Cir.1999); *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442–43 (9th Cir.1983). Since, however, "appellate standing" is a discretionary, rather than a jurisdictional, doctrine, we are not compelled to dismiss.

Appellants are not creditors. Appellants' briefs are barren of authority for the necessary proposition that they have standing to appeal a refusal to disqualify opposing counsel for a conflict of interest that does not involve any ethical duty owed to them. Thus, if the bankruptcy court rules that GGL & T is authorized to proceed under § 503(b)(3)(B), appellants will need to demonstrate standing in order to have any such order reviewed on appeal.

### CONCLUSION

The bankruptcy court abused its discretion when it authorized employment under § 327 without GGL & T's prior compliance with the procedure prescribed by § 327(c) and Rule 2014. Accordingly, the employment order under § 327 must be REVERSED. The court may authorize § 327 employment if, and only if, GGL & T fully complies with § 327 and Rule 2014.

This error, however, may be harmless. Without § 327 employment, the court may authorize GGL & T to proceed pursuant to § 503(b)(3)(B), representing Arrow suing in the name of the trustee. We VACATE and REMAND the orders refusing to disqualify GGL & T, so that the bankruptcy court may clarify the capacity in which this adversary proceeding is being prosecuted.

If the court determines that the action is proceeding under § 503(b)(3)(B), the terms of employment, including payment terms and who bears the risk of non-payment by the bankruptcy estate, are between GGL

& T and Arrow. While compensation from the estate is governed by § 503(b)(4), Arrow and GGL & T may allocate among themselves the risk of non-payment by the estate. Those private contractual arrangements are none of the appellants' business.

MONTALI, Bankruptcy Judge, concurring and dissenting.

### I

I agree with the majority's conclusion in Part I that the amended order approving the employment of GGL & T must be reversed. As pointed out in the discussion, the amended application lacked all of the supporting papers necessary to determine whether GGL & T was eligible for employment under Bankruptcy Code section 327(a), the section relied upon by appellee. There has *never* been a proper employment of GGL & T under that section and Rule 2014(a). In my view this defect is fatal to appellees' case.

GGL & T has steadfastly refused without justification to disclose the details of its arrangements with Arrow, even up to the time of oral argument on this appeal. It should not be rewarded for such arrogance, nor should it be given anything else other than its outright termination as counsel to the trustee. If Arrow wants to pay for GGL & T's work, so be it. The estate should not. *See Neben & Starrett, Inc. v. Chartwell Financial Corp. (In re Park–Helena Corp.)*, 63 F.3d 877 (9th Cir. 1995) (court must ensure attorneys representing estate do not have adverse interests; forfeiture of all fees for non-disclosure not inappropriate); *Atkins v. Wain, Samuel & Co. (In re Atkins)*, 69 F.3d 970, 974 (9th Cir.1995) (factors to show exceptional circumstances for retroactive approval of employment include satisfactory explanation for failure to obtain proper approval).

Reversal of the amended employment order should make reversal of the bankruptcy court's two refusals to disqualify GGL & T follow as a matter of course.

### II

Where I depart from the majority's analysis is in Part II, where it proceeds to give the trustee and his now-disqualified special counsel a road map to follow a trail they never considered in an attempt to salvage their attempt to pursue appellants. The majority begins with a false assumption to reach the conclusion that GGL & T's employment constituted an authorization for Arrow to seek to recover assets for the benefit of the estate as permitted by Bankruptcy Code section 503(b)(3)(B).

It suggests that "... the record presents the pattern of § 503(b)(3)(B)'s authorization for creditors to sue in the trustee's name ...." We look to the record for facts, not patterns. As a matter of fact, Arrow did nothing. It asked for nothing. No one other than the majority ever thought of § 503(b) as a solution to the dilemma presented. No party contemplated the availability of § 503(b) or requested relief under it. In *Godon*, the trustee and the creditor entered into a compromise, governed by Rule 9019. That agreement did not mention §§ 503(b)(3) or (b)(4). *Godon*, 275 B.R. at 561. At the hearing someone raised the possibility of reaching the same result under § 503(b). I can only guess who was that creative. Thus, the statement by the majority that "...the court could permit GGL & T to prosecute the adversary proceeding as counsel to Arrow on the basis of § 503(b)(3)(B) permission to recover property for the benefit of the estate" is wholly unsupported in the record and is wholly speculative.

Our duty on the Bankruptcy Appellate Panel is to correct error; it is not to draft trial briefs for parties who fail to achieve

what they attempt. We should not be outlining alternatives for unsuccessful litigants. GGL & T failed miserably in its efforts to act as the trustee's counsel. If and when Arrow seeks permission for its attorneys to sue in the trustee's name, the bankruptcy court should consider all relevant factors. It is impermissible, indeed unseemly, for this court to outline Arrow's legal approach to a matter never presented to the bankruptcy court. We are neither qualified to act as a party's advocate, nor authorized to issue advisory opinions.

In sum, while it is true that we can affirm for any reason, and perhaps even for reasons not even raised by the parties at the bankruptcy court or on appeal, we cannot change the underlying events in order to get to a result we wish to reach. Here the majority imports a section of the Bankruptcy Code that allows fees to be paid to a creditor who first obtains authority to recover an asset transferred or concealed by the debtor, and then actually recovers it. In fact, the trustee applied (for the reasons stated above, in a sloppy manner) to employ GGL & T as his special counsel. There has been no authorization for Arrow to do anything. Nor has there been any recovery of property transferred or concealed. The action brought by GGL & T against appellants seeks far more than the recovery of property within the purview of § 503(b)(3)(B); it includes counts based upon fraud, breach of contract and conspiracy. Since there has been no recovery at all, GGL & T's willingness to be paid only out of any recovery makes any stretching of section 503(b)(3) to cover these facts premature as well as inappropriate. Finally, there has been no request for compensation.

We should simply reverse the orders on appeal and let the chips fall where they may.

## III

I also reject the majority's intimation at Part III that appellants lack appellate standing. Appellees failed to raise standing as an issue at the bankruptcy court, and the majority correctly states that the issue has been waived. There is no suggestion in the majority's discussion that our jurisdiction is implicated. If it were, this appeal would have to be dismissed. The record reflects that appellees have never raised the issue of appellants' standing, and in my opinion the defense, if valid at all, has been waived twice.

## IV

The majority does not treat with the issue of whether GGL & T's representation of appellee has been tainted by a disqualifying conflict of interest. The majority has declined to elaborate on the issue; I would simply resolve the matter by observing that the trustee was pressured by the bankruptcy court to go forward with a settlement that he thought was opposed by creditors, and that he no longer supported himself. Thus it would be difficult, if not impossible, to accuse GGL & T, his counsel, of a disqualifying conflict when it was acting in a manner consistent with the wishes not only of Arrow, but of the trustee, its putative client, as well. That being said, the issue of disqualification based upon a conflict is moot in my mind, as set forth above, because there has never been (and never should be) a proper authorization of GGL & T's employment.