NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-18-1032-TaLS |
| SAWTELLE PARTNERS, LLC, | Bk. No. 2:16-bk-21234-BR |
| Debtor. | |
| SATELLITE CAPITAL, LLC, | |
| Appellant, | |
| v. | MEMORANDUM[*] |
| EMACIATION CAPITAL, LLC; SAWTELLE PARTNERS, LLC; ETHAN MARGALITH; PETER J. MASTAN, CHAPTER 7 TRUSTEE, | |
| Appellee. | |

Argued and Submitted on May, 23, 2018
at Pasadena, California

Filed – July 1, 2019

Appeal from the United States Bankruptcy Court

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

for the Central District of California

Honorable Barry Russell, Bankruptcy Judge, Presiding

Appearances:    David Shemano of ShemanoLaw argued for appellant
Satellite Capital, LLC; Ronald N. Richards of the Law
Offices of Ronald Richards & Associates, APC argued for
appellee Emaciation Capital, LLC.

Before: TAYLOR, LAFFERTY, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

Chapter 11[1] Trustee Peter J. Mastan entered into a settlement (the
"Settlement Agreement") with Emaciation Capital, LLC ("Emaciation"), a
party asserting a senior lien against real property owned by debtor
Sawtelle Partners, LLC. The Settlement Agreement resolved all of the
estate's claims against Emaciation and all of Emaciation's claims against its
real property collateral and the bankruptcy estate. Pursuant to the
Settlement Agreement, Emaciation made a payment of $108,000, the
Trustee agreed to transfer title to the property to Emaciation or its assignee,
and Emaciation agreed that its secured claim would be "deemed

---

[1] Unless specified otherwise, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules
of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of
Civil Procedure.

disallowed" or withdrawn with prejudice. The Settlement Agreement expressly provided that the agreement regarding the secured claim would not have issue preclusive effect. The bankruptcy court approved the settlement over opposition that focused on the amount of payment and the value of the property. The bankruptcy court found that the settlement was in the best interest of the estate and authorized the Trustee to consummate the transaction.

Both the Settlement Agreement and the order approving the Settlement Agreement were silent as to the continued efficacy of the Emaciation lien. As a result, once the settlement dust settled, the junior lien holder, Satellite Capital, LLC ("Satellite"), filed a state court action seeking to quiet title to the real property. The state court complaint contained three causes of action; two claimed that the Settlement Agreement rendered the Emaciation lien invalid. The third sought a declaratory judgment based on a state law theory.

Pandemonium followed. Emaciation engaged in a full-throated defense. It removed the quiet title action to the bankruptcy court and sought judgment in its favor. But it also sought relief through a Civil Rule 60 motion and requested either that the settlement order be expunged or that it be modified to make clear that lien avoidance did not result.

The Trustee opposed the Civil Rule 60 motion and focused largely on the effort to expunge the settlement. Satellite also opposed, arguing that

Civil Rule 60 relief was not appropriate. At the hearing, the bankruptcy court chose to "clarify" its prior order approving the settlement. It provided no Civil Rule 60-specific basis for its ruling.

Later, the bankruptcy court also granted relief in favor of Emaciation in the withdrawn adversary proceeding. The record suggests that it relied largely on its previous "clarification" of the order approving the Settlement Agreement.

Because the bankruptcy court failed to identify the correct legal standard and because none of Emaciation's suggested legal bases justify reconsideration, we REVERSE.

## FACTS

In April 2016, Debtor filed a chapter 11 petition. Its sole asset was real property located on Sawtelle Boulevard in Los Angeles (the "Property") which it valued at $9,000,000. In November 2016, Peter Masten was appointed as the chapter 11 trustee.

Emaciation and Satellite entered the case postpetition. Satellite acquired an interest in a junior trust deed and claim scheduled at about $3,100,000. Emaciation acquired an interest in a senior trust deed and claim scheduled at about $9,300,000. The Emaciation debt was owed by Debtor, Starving Students (an affiliate of Debtor), and their common owner, Ethan Margalith, and apparently arose out of a refinancing.

The Trustee initially tried to sell the Property; those efforts faltered.

4

He eventually objected to Emaciation's claim on various theories and argued that there was a potential fraudulent transfer claim.

Satellite joined in the attack on Emaciation. It emphasized that Emaciation refused to provide a payoff and sought disallowance of postpetition interest and fees.

Emaciation fought back; it sought stay relief, alleging that the Property was worth $12,200,000, that it had a $12,000,000 secured claim, and that relief was warranted under § 362(d)(1), (d)(2)(A), and (d)(3). After argument, the bankruptcy court continued the hearing on Emaciation's stay relief motion so it could be heard alongside the claim objection.

The Trustee and Emaciation then agreed to settle their disputes, and the Trustee filed a motion to approve the Settlement Agreement. He described the material terms of the compromise as: Emaciation paying $108,000 to settle the fraudulent transfer claim; the Trustee assigning to Emaciation or its assignee the estate's interest in the Property; Emaciation's claim being deemed disallowed; and the parties providing mutual releases.

The Trustee attached the Settlement Agreement. The recitals state that the Parties "desire to fully, finally and forever settle their disputes regarding the Sawtelle Property, including the Emaciation Lien and Objection to Claim, and release any and all claims that they may have, now or in the future, against each other relating in any way to the Bankruptcy Case, Emaciation Lien, Fraudulent Transfer Claim, and allegations

contained in, or that could have been alleged in the Stay Relief Motion or Objection to Claim, except as specifically set forth in this Agreement."

Satellite, in what it claims was an intentional decision, did not object to the settlement approval motion. But the Debtor and Mr. Margalith did; Debtor argued that the Trustee's marketing efforts were not sufficient and that the relevant factors for approval of the settlement were not met. The Trustee, in reply, asserted that his marketing efforts were extensive, that interest in the Property was significant, but that the offers were not sufficient to cover the as-asserted secured claims.

At a hearing, the bankruptcy court approved the settlement over Debtor and Mr. Margalith's objection; it then entered the Trustee's proposed order (the "Settlement Order").

The Settlement Order states, as relevant here:

1. Adequate notice of the Motion and the hearing on the Motion was provided to all interested parties;

2. All opposition to the Motion is overruled;

3. The Motion is granted in its entirety;

4. The Agreement, being in the best interests of the estate, is hereby approved and the Trustee is authorized to execute the Agreement and consummate the transactions contemplated by the Agreement;

5. The Trustee is authorized to settle the fraudulent transfer claim against Emaciation for an immediate payment of $108,000 on the terms set forth in the Agreement;

6. The Trustee is authorized to assign the Estate's interest in the Property to Emaciation or Satellite Down, LLC,

as Emaciation's assignee, on the terms set forth in the Agreement; [and]

   7.     The Trustee is authorized to execute any and all documents necessary to effectuate the settlement[.]

The Settlement Order was not appealed.

Once the Settlement Order became final, Satellite promptly brought a state court quiet title action concerning the Property. It alleged, in part, that because Emaciation's secured claim was disallowed through the claims allowance process by the Settlement Agreement, Satellite was entitled to a declaration that the first trust deed was extinguished and void under § 506(d) and that Satellite's trust deed was the senior, and only, lien on the Property.

In November 2017, Emaciation removed the quiet title action to the bankruptcy court. It also brought an action against the Trustee and Satellite seeking rescission of the Settlement Agreement.

That same month, the case converted to chapter 7; the Trustee remained in place.

**Emaciation's Civil Rule 60(b) motion.** In December 2017, Emaciation filed its Civil Rule 60(b) motion. It argued that clarification or vacatur of the Settlement Order was appropriate under Civil Rule 60(b)(1) and (b)(6). As to Civil Rule 60(b)(1), it argued that the quiet title action was an unfair surprise because it could not have anticipated that Satellite would raise the arguments it did. In a footnote, it argued that Civil Rule 60(b)(6)'s catch-all

7

provision also might apply.

In opposition, Satellite argued that Emaciation cited no caselaw supporting its assertion that Civil Rule 60(b) relief was appropriate in these circumstances. It conceded that Emaciation could raise merits-based arguments in the quiet title action, but it contended that the reconsideration motion should be denied. The Trustee also opposed, arguing that Emaciation had not shown cause to vacate the Settlement Order or to rescind the Settlement Agreement.

In its reply, Emaciation clarified that it sought clarification of the Settlement Order; it clarified in a footnote that it was not seeking Civil Rule 60(a) relief.

At the hearing, when asked, the Trustee's counsel indicated that the Trustee was likely indifferent about the continued existence of the lien. Hr'g Tr. (Jan. 19, 2018) at 7:8–19, 8: ("Well, I don't know if the Trustee had an intent other than to take the money . . . . Well . . . yes, I think it very well could be [unusual if Emaciation voluntarily gave up its lien], your honor, but I think as we pointed out, we didn't have an opposition to what they were saying. What we were saying is we -- our intent -- we didn't have an intent one way or the other. We just did the deal. Whatever their intent, their intent was."). The bankruptcy judge then granted the motion.

On January 19, 2018, the bankruptcy court entered its order (the "Modification Order"). It read:

8

The Court . . . has determined that the [Settlement Order] . . . shall be modified to reflect the understanding and intent of the Court when it approved the Compromise which is the subject of the [Settlement Order] and the instant Motion.

As the Court stated on the record on January 9, 2018:

> . . . I will prepare – modify my order to say what I thought what was happening, namely, that any waiver of the claim against the estate was only a claim of any deficiency after the foreclosure. . . . It would have been idiotic for the other side to basically be giving up their claim because they can't foreclose if you don't have an underlying claim. . . . [t]he order is going to be modified to say that — which was my understanding of what was going on that they're waiving any claims against the estate that that would be only after they foreclosed in the terms of any deficiency. That's what the intent of my order was.

Accordingly, the Motion is HEREBY GRANTED and the [Settlement Order] is HEREBY MODIFIED to clarify that Emaciation Capital, LLC only released its claim against the estate, not its first priority lien against the [Property], and the waiver of any claim by Emaciation Capital, LLC against the estate, as contemplated by the subject Compromise, is limited to any deficiency that may exist after foreclosure of the subject real property.

Satellite timely filed its notice of appeal.

**Related events.** A few related events provide some context to this appeal.

First, the Trustee also appealed the Modification Order. He eventually entered into a second settlement agreement with Emaciation. It provided that Emaciation would have a $28,931.03 administrative claim, that Emaciation would dismiss the Trustee from its adversary proceeding and, in exchange, the Trustee would dismiss his cross-appeal. The Trustee also "acknowledged" that the "Parties" never intended to impair Emaciation's lien. The bankruptcy court approved the settlement agreement by order. The Trustee then dismissed his cross-appeal.

Second, in Satellite's quiet title action, the bankruptcy court denied Satellite's motion to remand or grant a temporary restraining order, expunged Satellite's lis pendens, denied Satellite's motion for reconsideration, granted Emaciation's motion to dismiss the quiet title action, and granted Emaciation's motion for attorney's fees. Satellite appealed, and Emaciation elected to have the District Court handle the appeal. The District Court has stayed its appeal pending our decision.

Third, Emaciation foreclosed on and later sold the Property.[2]

---

[2] As a motions panel, we previously denied Emaciation's motion to dismiss, which was based on the Property's sale and Satellite's non-opposition to the initial settlement motion. Although we are not bound by that decision, we see no reason to

(continued...)

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 1334 and § 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.[3]

## ISSUES

Did the bankruptcy court abuse its discretion in granting the reconsideration motion?

## STANDARD OF REVIEW

We review for an abuse of discretion a bankruptcy court's decision to grant or deny a reconsideration motion. *Weiner v. Perry, Settles & Lawson, Inc. (In re Weiner)*, 161 F.3d 1216, 1217 (9th Cir. 1998); *Tennant v. Rojas (In re Tennant)*, 318 B.R. 860, 866 (9th Cir. BAP 2004).

There are two steps involved in an abuse of discretion review. *United States v. Hinkson*, 585 F.3d 1247 (9th Cir. 2009) (en banc). The "first step of our abuse of discretion test is to determine de novo whether the trial court identified the correct legal rule to apply to the relief requested." *Id.* at 1261–62. If the trial court failed to do so, it abused its discretion. *Id.* at 1262.

---

[2](...continued)
revisit it.

[3] In an unauthorized, post-argument brief, Emaciation for the first time argues that we lack jurisdiction because the Modification Order is not final. It notes that final orders end litigation on the merits, Civil Rule 60 orders "vacating or reconsidering" judgments without more are interlocutory, and the parties are still litigating in the District Court appeal. Emaciation is wrong. The Modification Order ended the litigation in the bankruptcy case; it did not vacate the Settlement Order or require any further proceedings related to it. And federal judgments are final even when on appeal.

The "second step . . . is to determine whether the trial court's application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (internal quotation marks omitted).

## DISCUSSION

Underlying this appeal is a dispute between Emaciation and Satellite about what the Settlement Agreement means. And the parties sought resolution in a variety of ways. Satellite filed a quiet title action; Emaciation sought reconsideration, dismissal of the quiet title action, and rescission of the Settlement Agreement. Emaciation prevailed in the first two methods, and Satellite has appealed the relevant orders.

In this appeal, we have jurisdiction only over the reconsideration order because Emaciation opted to have the District Court hear the appeal from the order dismissing the quiet title action. This constrains our range of appellate movement. For instance, assuming the bankruptcy court correctly dismissed the quiet title action on the merits (i.e., by interpreting the Settlement Agreement in accordance with state law), then any error in granting the reconsideration motion (i.e., by rewriting the Settlement Agreement) would be harmless.[4] But we lack the ability to so determine;

_____

[4] Before oral argument, we issued an order directing the parties to come prepared to discuss *at oral argument* the practical consequences of the bifurcated appeal. BAP Dkt. 39. Both parties took this as an invitation to submit additional papers. Under

(continued...)

thus, we proceed to the merits.

### A. The bankruptcy court abused its discretion when it entered the Modification Order.

In the Modification Order, the bankruptcy court concluded that the Settlement Order "shall be modified to reflect the understanding and intent of the Court when it approved the Compromise . . . ." The bankruptcy court never identified the source of its authority. Even Emaciation concedes this on appeal. Appellee's Answering Br. at 49 ("The fact that Judge Russell did not state on the record the statutory basis for his ruling is irrelevant . . . ."). As noted above, a failure to identify the correct legal standard amounts to an abuse of discretion.

Given the motion's context, identifying the legal standard is important. The bankruptcy court granted the Trustee's motion to approve a settlement agreement under Rule 9019. That rule provides: "On motion by the trustee and after notice and a hearing, the court may approve a

---

[4](...continued)
the auspices of Federal Rule of Appellate Procedure ("FRAP") 28(j), Satellite submitted a copy of the District Court's order staying the District Court appeal pending resolution of this appeal. Emaciation, also ostensibly under FRAP 28(j), filed another reply.

To start, the Panel did not invite additional papers. It invited discussion at oral argument. Second, Federal Rule of Appellate Procedure 28(j) does not even apply; Rule 8014 governs. That said, Rule 8014(f) is analogous to FRAP 28(j). Third, Rule 8014(f) states that the body of the submission must not exceed 350 words. Emaciation's argumentative paper exceeds this. Accordingly, we **strike** Emaciation's filing at BAP Dkt. 41. We also **strike** Emaciation's filing at BAP Dkt. 46; it does not refer to any pertinent or significant authority.

compromise or settlement." Fed. R. Bankr. P. 9019(a). When deciding whether to grant a motion to approve a settlement, the bankruptcy court has considerable latitude. *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1998). But that discretion "is not unlimited." *Id.* A compromise must be "fair and equitable." *Id.* The four relevant factors in accessing fairness and equity are: "(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1381 (9th Cir. 1986). The analysis focuses on the fairness and equity from the perspective of the bankruptcy estate.

Emaciation sought reconsideration or vacatur of the order granting the Trustee's motion approving the settlement. Emaciation did not discuss the *A & C Properties* factors; it also did not argue that the bankruptcy court erred in granting the motion or should have denied the motion instead. Instead, Emaciation sought an interpretation of the Settlement Agreement. When it granted the reconsideration motion, the bankruptcy court neither stated that granting the motion was error nor discussed the *A & C Properties* factors.

As a result, we confront a "reconsideration" decision that is far afield

14

from the initial decision to "approve or disapprove" the Settlement Agreement. Viewing Emaciation's reconsideration request through the lens of the *A & C Properties* factors confirms this. Emaciation sought clarification that the Settlement Agreement did not extinguish its lien on the Property; but given the Trustee's agreement to quitclaim the Property to Emaciation or its assignee and to settle the claim objection in exchange for $108,000 and the disallowance of Emaciation's claim against the estate, the Trustee and estate would be indifferent as to whether Emaciation's lien still encumbered the Property or was extinguished. The Trustee's counsel, at the hearing on Emaciation's motion, clearly expressed this indifference. Emaciation requested clarification, then, about a non-essential and irrelevant component of the deal from the Trustee or estate's perspective. More importantly, this clarification did not affect the propriety of the bankruptcy court's initial evaluation of the relevant *A & C Properties* factors. Approval or disapproval of the Settlement Agreement did not turn on the lien's extinguishment.

On appeal, Satellite contends that the bankruptcy court impermissibly altered the Settlement Agreement. Emaciation seems to concede alteration, but it argues that bankruptcy courts may do so on reconsideration. Put differently, Emaciation supposes that an ability to modify an order approving a settlement agreement also allows modification of the underlying settlement agreement.

We disagree. A settlement agreement and a bankruptcy court's order granting a motion to approve a settlement agreement are different.

In *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 376–79 (1994), the Supreme Court considered whether a district court had ancillary jurisdiction to enforce a settlement agreement that resulted in dismissal of a federal lawsuit. No, it concluded. *Id.* at 382. When considering the component of ancillary jurisdiction that allows a court to vindicate its own orders, the Supreme Court stated: "The judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his [or her] order." *Id.* at 381.[5]

In *Sea Hawks Seafood, Inc. v. State of Alaska (In re Valdez Fisheries Development Association, Inc.)*, 439 F.3d 545, 546 (9th Cir. 2006), the Ninth Circuit considered whether a bankruptcy court, having approved a

---

[5] In *Kokkonen*, the Supreme Court suggested a way for litigants to avoid its holding:

> The situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal—either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist. That, however, was not the case here.

511 U.S. at 381. Here, the Settlement Order did not retain jurisdiction over the Settlement Agreement or incorporate the terms of the Settlement Agreement.

16

settlement agreement, had jurisdiction to interpret that settlement agreement in an adversary proceeding filed after case closure and dismissal. In concluding that the bankruptcy court did not have such jurisdiction, the Ninth Circuit addressed the State of Alaska's attempts to distinguish *Kokkonen*. First, the State of Alaska argued "that *Kokkonen* does not apply because the settlement agreement here required and received the bankruptcy court's approval." *Id.* at 549. Not so, the Ninth Circuit held, relying on the above-quoted language from *Kokkonen*. *Id.* (quoting *Kokkonen*, 511 U.S. at 381). Next, the State of Alaska contended that *Kokkonen* involved enforcing a settlement agreement while it sought interpretation of a settlement agreement. The Ninth Circuit again disagreed: "So far as the application of the *Kokkonen* principle is concerned, we find no relevant difference between a proceeding to enforce a settlement agreement and one to interpret it." *Id.* at 550.

Emaciation thus improperly conflates the Settlement Order and the Settlement Agreement. They are different. As a result, an ability to modify the Settlement Order does not necessarily allow the bankruptcy court to modify the Settlement Agreement.

That said, Emaciation rightly observes that we may affirm for any reason in the record, *COM–1 Info, Inc. v. Wolkowitz (In re Maximus Computers, Inc.)*, 278 B.R. 189, 194 (9th Cir. BAP 2002), and that we may ignore harmless error. The question, then, is whether any of Emaciation's

17

proffered justifications for the Modification Order warrant affirmance. They do not.

### B. Emaciation does not provide a sufficient legal justification for the Modification Order.

**Civil Rule 60(b).** On appeal, Emaciation argues that it was entitled to relief under Civil Rule 60(b). We disagree. In its appellate responsive brief, Emaciation refers generally to Civil Rule 60(b)(1) and (b)(6), but it never distinctly states the theory it relies on or discusses the relevant legal standard for either; instead, it expounds on how it "demonstrated" in its underlying motion that it could not anticipate what Satellite would do. Appellee's Answering Brief at 50–52. We read this as Emaciation reifying its underlying Civil Rule 60(b)(1) argument.

Civil Rule 60(b), applied in bankruptcy proceedings by Rule 9024, provides: "On motion and just terms, the court may relieve a party . . . from a . . . order . . . for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . ." Fed. R. Civ. P. 60(b). Emaciation sought to use the "surprise" prong. It was surprised, it contends, because it could not have anticipated that Satellite would interpret the Settlement Agreement as it did and then bring a state court action based on that interpretation.

But a failure to anticipate the actions of a third party does not qualify as "surprise" under Civil Rule 60(b)(1). To start, Emaciation cites no caselaw discussing either the "surprise" prong or establishing that a party's

failure to foresee how a third party may interpret an agreement or judgment qualifies as Civil Rule 60(b)(1) "surprise". And Satellite, to its credit, cites authority where courts have rejected this proposition.[6] But Satellite's authority is out of circuit, and thus we acknowledge that it is persuasive but not binding.

But Emaciation also advances no argument that supports its reliance on Civil Rule 60(b)(1) and its conception of "surprise." Part of Emaciation's conundrum in the Civil Rule 60(b)(1) context is that it, understandably, refuses to concede that Satellite's position is correct. Emaciation signed the Settlement Agreement based on its understanding of the agreement's legal effect; Satellite had a different take and brought suit. If Emaciation's interpretation is right and it prevails, then reconsideration was unwarranted. But if Satellite's interpretation is correct, then Emaciation's misapprehension of the Settlement Agreement is not a *surprise* so much as it is a *mistake*.

And the Ninth Circuit has held that Civil Rule 60(b)(1)'s mistake

---

[6] *White v. New Hampshire Dep't of Employment Sec.*, 679 F.2d 283, 286 (1st Cir. 1982) ("Finally, NHDES seeks review of the district court's refusal to vacate the decree under Fed. R. Civ. P. 60(b)(1), which provides inter alia for relief from judgment on the ground of 'surprise.' NHDES argues that it was surprised by the motion for attorneys' fees, believing that entry of the consent decree (which did not mention fees) ended the litigation. The court's conclusion that plaintiff did not waive his right to seek fees, see note 2, supra, goes far toward rebutting NHDES's claim of unfair surprise. Moreover, the court could reasonably have concluded that such surprise as there might have been did not rise to a level which would justify vacating the decree itself.").

prong does not apply to this type of mistake, whether committed by a party or its counsel:

> We agree that Rule 60(b)(1) is not intended to remedy the effects of a litigation decision that a party later comes to regret through subsequently-gained knowledge that corrects the erroneous legal advice of counsel. For purposes of subsection (b)(1), parties should be bound by and accountable for the deliberate actions of themselves and their chosen counsel.

*Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1101 (9th Cir. 2006). Further, *Latshaw* favorably quotes *United States v. Bank of New York*, 14 F.3d 756, 759 (2d Cir. 1994): "When a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect." *Id.* at 1101.

As a result, we conclude that to the extent the bankruptcy court granted Emaciation's motion based on Civil Rule 60(b)(1) and "surprise", it abused its discretion.

Emaciation also argued in its underlying reconsideration motion that Civil Rule 60(b)(6) justified relief. But it does not raise this argument in its answering appellate brief. This works a waiver. *United States v. Dreyer*, 804 F.3d 1266, 1277 (9th Cir. 2015) (en banc) ("Generally, an appellee waives any argument it fails to raise in its answering brief."). And this is not an exceptional case where we will exercise our discretion to consider a waived issue. *Cf. id.* at 1277–78.

In sum, we conclude that the bankruptcy court erred to the extent it

granted the motion based on Civil Rule 60(b)(1)—the only Civil Rule 60 section that Emaciation relies on.

**Civil Rule 60(a).** Satellite argues on appeal that Civil Rule 60(a) does not justify the order. But Emaciation never argued in its underlying motion that Civil Rule 60(a) relief was appropriate. To the contrary, it clarified in its underlying reply papers that it was not seeking relief under Civil Rule 60(a), a point it reiterates on appeal. Appellee's Answering Br. at 35 ("Therefore, the entire line of cases cited for the proposition that Rule 60(a) cannot be used to modify or alter a settlement agreement is entirely irrelevant to this appeal since Rule 60(a) did not form the basis of Emaciation's request. Nor did the Bankruptcy Court state that its ruling was based on the type of mistake or error codified in Rule 60(a)."). Since Emaciation has intentionally relinquished any reliance on Civil Rule 60(a), we discuss it no more.

**Inherent authority.** Emaciation argues that bankruptcy courts have the authority to modify previously-approved settlement agreements under their inherent authority and § 105. As courts of equity, Emaciation contends, bankruptcy courts may reconsider, modify, or vacate their previous orders independent of Civil Rule 60. Emaciation relies on three cases. None support affirming the Modification Order.

We first consider *Black Farmers Discrimination Litigation*, 950 F. Supp. 2d 196 (D.D.C. 2013). Emaciation argues that it stands for the proposition

21

that Civil Rule 60(b) allows courts to modify or clarify underlying settlement agreements. This case, however, is readily distinguishable. First, it concerns a consent decree, and the parties seeking modification wanted to *augment* the procedures laid out in the underlying order. *Id.* at 197–200. It thus did not concern a Rule 9019 settlement agreement approved by a bankruptcy court that did not incorporate the terms of the settlement agreement into the order. Second, in any event, the district court in that case denied the Civil Rule 60 motion because the plaintiffs failed to show cause under Civil Rule 60(b)(5); accordingly, the district court declined to "disregard[] the terms of the carefully negotiated Settlement Agreement . . . ." *Id.* at 201.[7] Having already concluded that Emaciation has not shown sufficient cause for Civil Rule 60(b) relief, we see no need to consider this case further. In short, *Black Farmers Discrimination Litigation* is a Civil Rule 60 case, not an inherent authority case.

We consider the next two cases—*A & A Sign Co. v. Maughan*, 419 F.2d 1152 (9th Cir. 1969) and *Dye v. Sachs (In re Flashcom)*, BAP No.

---

[7] *Id.* ("Because the plaintiffs are seeking to alter terms that were bargained for by the parties and inscribed in the Settlement Agreement, in the absence of significantly changed circumstances, their motion cannot be granted without the consent of the defendant."). *See also Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 378 (1992) ("There is no suggestion in these cases that a consent decree is not subject to Rule 60(b). A consent decree no doubt embodies an agreement of the parties and thus in some respects is contractual in nature. But it is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees.").

CC–13–1311–KuDaKi, 2014 WL 4923073 (9th Cir. BAP Oct. 1, 2014)
—together.

In *Maughan*, a Bankruptcy Act case, a trustee entered into a stipulated settlement agreement that was approved. 419 F.2d at 1154. Later, the trustee filed a motion to correct the stipulation, which was granted. *Id.* On appeal, the Ninth Circuit held: "In the exercise of its inherent equitable powers, the bankruptcy court has authority to modify or vacate its own interlocutory orders." *Id.* at 1155 (citing *School Dist. No. 5 v. Lundgren*, 259 F.2d 101 (9th Cir. 1958)). In a footnote to this text, it rejected the trustee's reliance on Civil Rule 60(b) because that rule "applies only to final orders and judgments." *Id.* at 1155 n.2. Because the approval order was interlocutory, the decision to vacate the "prior order approving the stipulation fell well within the discretionary authority committed to the court." *Id.* at 1155.

Having concluded that the bankruptcy court could vacate its interlocutory order approving the settlement, the Ninth Circuit then held that the bankruptcy court erred in modifying the agreement. *Id.* First, it affirmed that a bankruptcy court "in exercise of its equitable powers can set aside a stipulation entirely if the interests of justice so require and if the parties can be restored to the positions they occupied before they entered the stipulation." *Id.* Despite that power, however, the bankruptcy court "cannot remove a material part of the stipulation over the objection of one

23

of the parties to it and enforce the rest of the agreement." *Id.* Second, the Ninth Circuit noted that the order "could have been sustained had there been findings supported by substantial evidence warranting reformation of the stipulation." *Id.* at 1156.

In *In re Flashcom*, two parties entered into a global settlement agreement and received bankruptcy court approval of that agreement. *Id.* at *2. Some six years later, one of the parties sought entry, by the bankruptcy court, of a $9,000,000 stipulated judgment provided for by the settlement agreement because the other party allegedly failed to make an either $50,000 or $62,500 final installment payment after already paying $750,000. The bankruptcy court declined to enforce the settlement agreement and enter the stipulated judgment; it held that entry of the stipulated judgment amounted to an unenforceable penalty.

We affirmed this determination on appeal. Initially, we clarified that Civil Rule 60(b) was not applicable and that the bankruptcy court had considerable discretion because the stipulated judgment had not been entered and thus was not final. *Id.* at *6. Instead, we considered *Maughan* and other Ninth Circuit decisions holding that bankruptcy courts have inherent power to modify previously entered orders. *Id.* at *7–9. This modification power, we noted, was subject to some limitations. *Id.* at *8. First, the bankruptcy court may not modify an order if a party has detrimentally relied on the part of the order subject to modification. *Id.*

24

Second, the bankruptcy court may not modify an order over the objection of the adverse party "by excising one provision of the parties' stipulation but leaving the rest of the parties' stipulation in tact [sic]." *Id.* This second limitation, we noted, was subject to its own equitable exception: the party seeking to invoke the anti-modification provision must have acted equitably. *Id.* Neither limitation, we found, was present. *Id.* at *8–9. We also agreed that entry of the stipulated judgment would amount to an unenforceable penalty under California law and, as a result, principles of state contract law supported the deviation. *Id.* at *9.

From these cases, Emaciation supposes that bankruptcy courts have the inherent authority to modify settlement agreements even after the bankruptcy court approves them. But they are distinguishable. To start, neither case involves a final order; one concerns an interlocutory order (*Maughan*) and the other addresses entry of a proposed stipulated judgment (*In re Flashcom*).

Second, Emaciation overlooks that these cases apply state contract law. In *Maughan*, the Ninth Circuit noted that the settlement agreement *could have been* modified if there had been sufficient findings supporting contract reformation. 419 F.2d at 1156. And as just noted, in *In re Flashcom*, we declined enforcement in part because the original contract contained an unenforceable penalty. *In re Flashcom*, 2014 WL 4923073, at *9. In the present case, the bankruptcy court did not consider application of state

25

contract law; nor does Emaciation argue on appeal that application of state contract law justifies the order.

Third, both *Maughan* and *In re Flashcom* considered the antimodification limitations on the bankruptcy court's inherent powers. In *Maughan*, modification was improper because it would be over a party's objection; in *In re Flashcom*, although a party objected, we concluded that the objecting party's own inequitable conduct instigated the dispute. Here, the bankruptcy court approved the modification over the Trustee and Satellite's objections. We acknowledge that the Trustee has since settled his appeal from the Modification Order. But the Trustee's later entry into a further contract with Emaciation to clarify the earlier contract does not justify the bankruptcy court's entry, under its inherent power, of the Modification Order over the Trustee's initial objection. As a result, this case is closer to *Maughan*, where modification was inappropriate, than it is to *In re Flashcom*, where we held that a court approved settlement that included a penalty was unenforceable under state law.

As a result, we are not persuaded that affirmance is warranted based on the bankruptcy court's inherent power. Because Emaciation provides no other justification for the Modification Order, we conclude that the bankruptcy court abused its discretion in granting Emaciation's Civil Rule 60(b)(1) motion.

\* \* \*

In sum, we conclude that the bankruptcy court erred when it granted Emaciation's reconsideration motion. It failed to identify a legal standard, and Emaciation fails to otherwise justify the order on appeal. But, returning to a point mentioned earlier, we emphasize that we do not decide the merits of the underlying dispute: how to interpret the Settlement Agreement. Emaciation may well be correct that the Settlement Agreement did not extinguish its lien. But that is a decision that should be made in the adversary proceeding. With this decision, we conclude only that Emaciation could not short-circuit the process by way of a reconsideration motion. To reiterate, to the extent the Settlement Agreement is properly interpreted as Emaciation requests in the quiet title action, any error in the bankruptcy court's decision on reconsideration would be harmless.

## CONCLUSION

Based on the foregoing, we REVERSE.